## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ZONE FIVE, LLC, ET AL.,

        **Plaintiffs,**

v.

                                         **Case No. 20-1059-DDC-KGG**

TEXTRON AVIATION, INC.,

        **Defendant.**

_____

### MEMORANDUM AND ORDER

Plaintiffs—some 748 individual owners of airplanes manufactured by defendant Textron Aviation—sued defendant after their airplanes' windows cracked. Plaintiffs have filed eight claims against defendant—claims for (1) breach of implied warranty, (2) breach of express warranty, (3) fraudulent inducement, (4) strict liability in manufacturing, (5) strict liability in design, (6) negligence in manufacturing, (7) negligence in design, and (8) deceptive trade practices. Doc. 63 at 169–81 (Third Am. Compl. ¶¶ 755–807). Defendant moves to dismiss six of the eight claims under Federal Rules of Civil Procedure 9(b) and 12(b)(6). Before the court is defendant's Partial Motion to Dismiss (Doc. 69) and Memorandum in Support (Doc. 70). Plaintiffs have responded (Doc. 82), and defendant has replied (Doc. 84). For the reasons explained below, the court grants defendant's Partial Motion to Dismiss (Doc. 69), in part and denies it in part.

Also before the court is defendant's Motion for a More Definite Statement (Doc. 67) and Memorandum in Support (Doc. 68). Defendant's motion asks that the court order plaintiffs to provide a more definite statement of Count VIII, their Deceptive Trade Practices claim, under Federal Rule of Civil Procedure 12(e). Doc. 67. Plaintiffs have responded (Doc. 81) and

defendant has replied (Doc. 83).  Defendant also has requested an oral argument on the issue.  *See* Doc. 67.  Plaintiffs have filed a Motion for Leave to File Sur-Reply (Doc. 85).  For reasons explained below, the court grants defendant's Motion for a More Definite Statement (Doc. 67), denies its request for an oral argument,[1] and denies plaintiffs' request for leave to file a surreply (Doc. 85).[2]

## I.      Factual Background

The following facts come from plaintiffs' Third Amended Complaint (Doc. 63).  The court accepts the facts as true and views them in the light most favorable to plaintiffs, as the

---

[1]      Defendant's motion also requests "oral argument" on the motion.  Doc. 67 at 1.  Our local rule, D. Kan. Rule 7.2, gives the court discretion to "set any motion for oral argument or hearing at the request of a party or on its own initiative."  The court finds here that the parties' papers adequately present the issues raised by the defendant's motion.  An oral argument isn't necessary or consistent with Fed. R. Civ. P. 1.  So, the court declines to set oral argument on this motion.

[2]      Under D. Kan. Rule 7.1(c), briefing on motions is limited to the motion (with memorandum in support), a response, and a reply.  Surreplies typically are not allowed.  *Taylor v. Sebelius*, 350 F. Supp. 2d 888, 900 (D. Kan. 2004), *aff'd on other grounds*, 189 F. App'x 752 (10th Cir. 2006).  Rather, surreplies are permitted only with leave of court and under "rare circumstances."  *Humphries v. Williams Nat. Gas Co.*, No. 96-4196-SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998) (citations and internal quotation marks omitted).  For example, when a moving party uses its reply to present new material—*i.e.*, new evidence or new legal arguments—and if the court *relies* on that new material, it should give the nonmoving party an opportunity to respond.  *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005); *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003); *see also EEOC v. Int'l Paper Co.*, No. 91-2017-L, 1992 WL 370850, at *10 (D. Kan. Oct. 28, 1992).

The rules governing filing of surreplies "are not only fair and reasonable, but they assist the court in defining when briefed matters are finally submitted and in minimizing the battles over which side should have the last word."  *Humphries*, 1998 WL 982903, at *1; *see also Int'l Paper Co.*, 1992 WL 370850, at *10 (explaining that briefing between parties "must have an end point and cannot be permitted to become self perpetuating").

Here, plaintiffs argue the court should permit them to file a surreply to address defendant's Reply, which, they argue, "mis-state[s] that [p]laintiffs have conceded violations of Rule 8 and Rule 11, and in addition, in a veiled manner, suggests that [p]laintiffs have somehow violated Kansas' ethical standards."  Doc. 85 at 1.  The court doesn't address these arguments; and so, it doesn't need any additional information or argument to assist it.

party opposing the Motion to Dismiss. *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1304 (10th Cir. 2020) (explaining that on a motion to dismiss the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to" the party opposing the motion (citation and internal quotation marks omitted)).

Hundreds of plaintiffs purchased defendant's aircraft, the Cessna TTx—a single engine, fixed-gear, general aviation aircraft.[3]  Doc. 63 at 45–46 (Third Am. Compl. ¶ 1).  At all times relevant, defendant designed and manufactured the Cessna TTx.  *Id.* at 160 (Third Am. Compl. ¶¶ 719–20).  Each plaintiff's Cessna TTx Aircraft suffered cracks, varying in degree, in and around the windows, windscreen, and pilot and passenger handles, and through the window glass.  *Id.* at 161 (Third Am. Compl. ¶ 732).  At times, this cracking caused complete failures of this airplane—which, for simplicity, this Order refers to as the Aircraft.  *Id.*

Defendant designed and manufactured this Aircraft with a latent defect.  *Id.* at 46 (Third Am. Compl. ¶ 2).  This defect caused the windows and, or the windscreen, and adjacent Aircraft skin to crack.  *Id.*  These cracks created seriously safety of flight issues—including the potential for failure of the airframe, and injury and death of occupants.  *Id.*  Plaintiffs also incurred exorbitant repair costs due to these defects or lost the use of their Aircraft due to grounding it for safety reasons.  *Id.*

Defendant promised repeatedly to correct and repair these defects but never did.  *Id.*  It induced plaintiffs to wait for non-existent repairs.  *Id.* (Third Am. Compl. ¶ 4).  Plaintiffs provide a few specific examples of defendant's promises:  On August 12, 2010, defendant's director of

---

[3]       The Cessna TTx Aircraft was originally designated as the "Columbia 300" in 2004 by Columbia Manufacturing, before Columbia Manufacturing dissolved and defendant purchased its assets, design, and Type Certificate.  Doc. 63 at 45–46 (Third Am. Compl. ¶ 1).  Defendant changed the name of this aircraft a few times before it settled on Cessna TTx in 2011.  *Id.*  Plaintiffs' Complaint refers to "all iterations of the . . . aircraft models, which share nearly identical airframes and are manufactured on the same Type Certificate" as "Aircraft" or "Cessna TTx" (*id.*), and the court adopts these terms.

field operations mailed a letter to plaintiff Steve Masters acknowledging reports of cracking and assuring Mr. Masters that defendant would pay for materials and labor to repair cracking. *Id.* at 166 (Third Am. Compl. ¶ 744); Doc. 63-8 (Masters Emails); Doc. 63-11 (Masters Letter). On February 11, 2009, defendant mailed a letter to plaintiff John Stenger, advising Mr. Stenger that defendant was aware of the cracking, and that defendant was revising its initial service bulletin to fix the problem, and would announce a new service bulletin and plan. Doc. 63 at 166 (Third Am. Compl. ¶ 746); Doc. 63-9 (Stenger Letter). Then, in 2014, plaintiff Bogdan Cocosel and defendant exchanged emails about the cracking issue, and defendant reassured plaintiff Cocosel that it was developing a solution to the problem. Doc. 63 at 168 (Third Am. Compl. ¶ 754); Doc. 63-14 (Cocosel Emails).

The owner of an aircraft Type Certificate, like defendant here, possesses exclusively the information about any global problems with design, systematic component failures, or dangerous trends within a model or type design. Doc. 63 at 47 (Third Am. Compl. ¶ 7). The Federal Aviation Administration (FAA) requires Type Certification owners to document such failures to protect and educate consumers. *Id.* Here, defendant failed to do so. *Id.* (Third Am. Compl. ¶ 9). Instead, defendant offered false assurances that the problems plaintiffs experienced with their Aircraft were simply "cosmetic" in nature and presented no structural or safety issues. *Id.; see also id.* at 161 (Third Am. Compl. ¶ 731). Defendant made this statement—that the cracking issues presented no safety issues—knowing that it wasn't true. *Id.* at 161 (Third Am. Compl. ¶ 731); *see also id.* at 164 (Third Am. Compl. ¶ 739). It did so to buy time and prevent examination from regulatory authorities. *Id.* at 47 (Third Am. Compl. ¶ 9).

Defendant owed a duty to provide the FAA with information about the safety, airworthiness, maintenance, service requirements, and any field difficulties known to it. *Id.* at

160 (Third Am. Compl. ¶ 721).  It had a duty to provide the same information to the owners and operators of the Cessna TTx.  *Id.* (Third Am. Compl. ¶ 722).  Defendant knew that its Aircraft—the Cessna TTx model—had pervasive problems of cracking around and on the actual windows and windscreen of the Aircraft.  *Id.* (Third Am. Compl. ¶ 723).  And defendant knew or should have known that this pervasive cracking created a potential flight safety issue for the Aircraft. *Id.* (Third Am. Compl. ¶ 724).

Defendant, through its managing agents and employees, repeatedly informed Aircraft owners that it would fix the problem with the Aircraft's window cracking.  *Id.* (Third Am. Compl. ¶ 725).  It did so to induce owners and operators of the Aircraft to refrain from acting themselves.  *Id.* (Third Am. Compl. ¶ 726).  Defendant represented—to plaintiffs and during a U.S. Bankruptcy Court proceeding—that it would repair all window cracks that began within the Aircraft's initial warranty period.  *Id.* at 161 (Third Am. Compl. ¶ 730); *see id.* at 165 (Third Am. Compl. ¶ 741).  Time and time again, defendant represented falsely that it was in the process of developing a solution for this cracking problem.  *Id.* at 160 (Third Am. Compl. ¶ 726).  But instead, it ceased manufacturing the Cessna TTx around January 2018 without warning or notice.  *Id.* (Third Am. Compl. ¶ 727).

Defendant's stalling tactics have produced a dangerously defective product remaining on the market and remaining in the air.  *Id.* at 47 (Third Am. Compl. ¶ 9).  A window breaking on an Aircraft—one capable of flying at an altitude of 25,000 feet at 275 miles per hour—would create a serious flight safety issue.  *Id.* at 165–66 (Third Am. Compl. ¶ 742).  Defendant's ongoing failure to correct this cracking defect, and ongoing misrepresentations about the safety of its product, create a heightened risk for one of these Aircraft to crash and injure or kill people. *Id.* at 47 (Third Am. Compl. ¶ 9); *see also id.* at 166 (Third Am. Compl. ¶ 743).  Plaintiffs filed

this lawsuit to ensure defendant fixes this defect and compensates plaintiffs for the damages they've sustained. *Id.* at 47 (Third Am. Compl. ¶ 9).

Plaintiffs purchased the CessnaTTx—one of the most expensive single engine piston aircraft in the world—at a premium price. *Id.* at 167 (Third Am. Compl. ¶ 748). Defendant's failure to repair these defects has decreased the Aircraft's value and will continue to do so. *Id.* And if the Aircraft's structural issues occur more frequently, the FAA will have to issue an Airworthiness Directive grounding the Aircraft and reducing plaintiffs' financial value to nothing. *Id.* (Third Am. Compl. ¶ 749). Plaintiffs have done their part. They each operated their Aircraft in a reasonably prudent manner, in accordance with the applicable operating handbooks and manuals. *Id.* at 161 (Third Am. Compl. ¶ 728). Plaintiffs maintained each Aircraft according to FAA regulations, "Service Literature," and "Airworthiness Directives" promulgated by the FAA and defendant. *Id.* (Third Am. Compl. ¶ 729). Had defendant provided accurate information about the Aircraft, plaintiffs would've paid substantially less for the Aircraft or purchased a different type of plane altogether. *Id.* at 167 (Third Am. Compl. ¶ 750).

## II.     Motion to Dismiss Legal Standards

Defendant seeks dismissal of plaintiffs' claims under Fed. R. Civ. P. 12(b)(6) and 9(b). Doc. 69 at 1. The court provides the governing legal standard for each rule, below.

### A.  Rule 12(b)(6)

Fed. R. Civ. P. 12(b)(6) allows a party to move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When considering a Rule 12(b)(6) motion to dismiss, the court must assume that the factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### B.  Rule 9(b)

Fed. R. Civ. P. 9 governs "pleading special matters" in cases, like this one, asserting a fraud claim. Fed. R. Civ. P. 9. For fraud allegations, "a party must state with *particularity* the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b) (emphasis added). In other words, Rule 9(b) demands a "heightened pleading standard[.]" *Welch v. Centex Home Equity, Co.*, 323 F. Supp. 2d 1087, 1094 (D. Kan. 2004) (citations omitted).

### III.   Analysis

Defendant moves to dismiss six of the eight claims asserted in plaintiffs' Third Amended Complaint. Doc. 69 at 1. Defendant asserts three arguments in favor of dismissing plaintiffs' claims. First, defendant argues that Kansas's economic loss doctrine bars plaintiffs' strict liability and negligence claims (Counts IV, V, VI, and VII). Second, it argues that the parties' limited warranty agreement bars plaintiffs' implied warranty and tort claims (Counts I, IV, V, VI, and VII). Third, defendant contends that plaintiffs' fraud claim (Count III) fails to satisfy the pleading requirements of Rule 9(b). The court addresses each argument, in turn, below.

### A.  Does the economic loss doctrine bar plaintiffs' tort claims?

Defendant argues that the court should dismiss plaintiffs' negligence and strict liability tort claims—Counts IV, V, VI, and VII—because Kansas law, specifically its economic loss

doctrine, bars these claims.  Before applying the economic loss doctrine to this case, the parties

engage in a preliminary dispute:  whether Kansas substantive law applies.  Thus, the court first

outlines the parties' choice of law arguments.

In a diversity jurisdiction case like this one, federal courts apply the choice of law rules

of the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  The claims

at issue here are tort claims.  Kansas's choice-of-law rules for tort claims require the court to

apply the law of the place where the tort occurred.  *Textron Aviation, Inc. v. Superior Air

Charter, LLC*, 420 F. Supp. 3d 1186, 1193 (D. Kan. 2019) ("Under Kansas law, the substantive

law of the state where the tort occurred applies."); *Ling v. Jan's Liquors*, 703 P.2d 731, 735

(Kan. 1985) ("The rule in this state is that the law of the state where the tort occurred—*lex loci

delicti*—should apply.").  Where the injury and the negligent conduct occurred in different states,

the place of injury controls.  *Draughon v. United States*, 103 F. Supp. 3d 1266, 1282 (D. Kan.

2015); *Brown v. Kleen Kut Mfg. Co.*, 714 P.2d 942, 944–45 (Kan. 1986).

Plaintiffs argue that their injuries occurred mostly in their home states—the places where

they experienced the economic effect of the injury.  *See Hermelink v. Dynamex Operations E.,

Inc.*, 109 F. Supp. 2d 1299, 1303 (D. Kan. 2000) ("When a plaintiff alleges financial injury, the

court looks to the law of the state in which the plaintiff felt that financial injury.").  None of the

plaintiffs reside in Kansas.  Not one Aircraft sustained damages in Kansas.  And plaintiffs don't

claim they experienced an economic injury in Kansas.  Thus, plaintiffs contend, Kansas lacks

significant contacts and interest in their claims based on defective aircraft design and fraudulent

misrepresentations.  The court agrees with plaintiffs.  Based on the Complaint, no alleged injury

occurred in Kansas.

But the court's analysis can't end there.  Defendant argues—even accepting as true that plaintiffs' injuries occurred elsewhere—the court still should apply Kansas substantive law.  That's so, defendant argues, because "a plaintiff cannot pursue a tort cause of action if the only damage suffered was to the product itself" under "settled public policy in Kansas[.]" *Philippine Am. Life Ins. v. Raytheon Aircraft Co.*, 252 F. Supp. 2d 1138, 1144 (D. Kan. 2003) (citing *Koss Constr. v. Caterpillar, Inc.*, 960 P.2d 255, 260 (Kan. Ct. App. 1998)).  And, "Kansas choice of law rules provide that Kansas courts will not apply the law of another state if such application is contrary to the settled public policy of Kansas." *Id.* at 1142 (citing *Hartford Accident & Indem. Co. v. Am. Red Ball Transit Co.*, 938 P.2d 1281, 1285–86 (Kan. 1997)).

Plaintiffs urge the court not to apply Kansas law to their claims.  They argue that Kansas lacks significant connection to their claims, and Oregon has the most significant connection to their claims—if any single state can claim the most significant connection.  And, plaintiffs argue, under Oregon law, "the economic loss doctrine 'is inapplicable when the damage is one to person or property.'"  Doc. 82 at 10 (quoting *JH Kelly, LLC v. Quality Plus Servs.*, 472 P.3d 280, 287 (Or. Ct. App. 2020) (emphasis omitted)).  But plaintiffs' argument merely asserts that Oregon law conflicts with Kansas law on this issue.  Then they argue the court shouldn't dismiss their claims based on Oregon's economic loss doctrine.  Plaintiffs fail to present a compelling argument that this court, a federal court sitting in Kansas, should apply another state's law— assuming that law *is* contrary to Kansas's settled public policy.  Thus, the court must address the issue whether Kansas law bars plaintiffs' tort claims.

Defendant argues that Kansas law doesn't allow "purchasers of 'defective goods [to] sue in negligence or strict liability where the only injury consists of damage to the goods themselves.'"  Doc. 70 at 11 (quoting *Koss Constr. v. Caterpillar, Inc.*, 960 P.2d 255, 260 (Kan

Ct. App. 1998)).  And, it argues, "[u]nder this rule 'a tort action is prohibited if the only damages suffered are economic losses.'"  *Id.* at 12 (quoting *David v. Hett*, 270 P.3d 1102, 1105 (Kan. 2011)).  Economic losses include "loss of use of the defective product, cost of replacing the product, loss of profits to plaintiff's business, or damage to plaintiff's business reputation from use of the product[,]" *Elite Pros., Inc. v. Carrier Corp.*, 827 P.2d 1195, 1202 (Kan. Ct. App. 1992), and "damages for inadequate value, [and] costs of repair," *Nw. Ark. Masonry, Inc. v. Summit Specialty Prods., Inc.*, 31 P.3d 982, 987 (Kan. Ct. App. 2001).  Relying on a Kansas Court of Appeals case from 1998, defendant argues that "economic losses" also include "'[d]amage to a product itself[.]"  Doc. 70 at 12 (quoting *Koss Constr.*, 960 P.2d at 258).  As explained below, defendant's statement of Kansas law isn't accurate.

Plaintiffs never present an argument why the court shouldn't dismiss their tort claims applying Kansas law.  They simply argue that the court shouldn't apply Kansas law, then explain why the court shouldn't dismiss their claims based on Oregon law.  Although plaintiffs don't provide the court much assistance reaching this conclusion, the court concludes it should deny defendant's Motion to Dismiss on this ground, even assuming Kansas law applies.  Because both parties fail to cite updated relevant Kansas law, the court does so.

In a 2019 opinion—*Corvias Military Living, LLC v. Ventamatic, Ltd.*—the Kansas Supreme Court clarified this state's economic loss doctrine.  450 P.3d 797 (Kan. 2019).  The Kansas Supreme Court explained that the Kansas Product Liability Act (KPLA) "codifies a [modified] version of the economic loss doctrine[.]"  *Id.* at 831 (citing Kan. Stat. Ann. § 60-3302(d)).  And the Court held that "the economic loss doctrine in Kansas does not preclude the recovery of property damage—even property damage to the product itself—within a product liability cause of action."  *Id.* at 831–32.  The *Corvias Military* opinion explained that the

economic loss doctrine barred "'direct or consequential economic loss'" but didn't preclude "damages for any damage to property," including "damage to product itself" *Id.* at 799, Syl. ¶ 1 (quoting Kan. Stat. Ann. § 60-3302(d)).  Our court has recognized the change in Kansas law as well.  *See Knobbe v. Deere & Co.*, No. 19-1248-EFM-ADM, 2019 WL 6307723, at *1 (D. Kan. Nov. 25, 2019) ("[T]he economic loss doctrine does not bar a plaintiff from recovering for property damage, including damage to the product at issue, on product liability claims." (citing *Corvias*, 450 P.3d at 799, Syl. ¶ 1)).

So, assuming Kansas's economic loss doctrine applies,[4] defendant could move to dismiss plaintiffs' claims for economic loss—*i.e.*, the "diminution of value, loss of use, cost of repair, loss of all value of the Aircraft . . . and loss of the benefit of the bargain[.]"  *See* Doc. 63 at 174– 76, 178, 180 (Third Am. Compl. ¶¶ 776, 783, 790, 795, 800).  But the doctrine wouldn't prevent plaintiffs recovering damages for damage done to their property—*i.e.*, "physical damage to the Aircraft[.]"  *See id.*  Defendant's motion doesn't differentiate between the two types of damages. It asks the court to dismiss plaintiffs' claims—ones seeking to recover damages for economic loss and property damage—in their entirety.  Kansas law doesn't support defendant's request. The court thus denies defendant's Motion to Dismiss on this economic loss doctrine ground.

## B. Did the parties agree to a limited warranty agreement that bars plaintiffs' implied warranty and tort claims?

Next, defendant asserts the court should dismiss plaintiffs' tort claims—Counts IV, V, VI, and VII—because defendant's limited warranty for plaintiffs' Aircraft expressly disclaims

---

[4]       At this stage in the proceedings, the court can't hold that Kansas substantive law, *i.e.*, Kansas's economic loss doctrine, applies to these plaintiffs' claims.  The parties will have to present a choice of law analysis *for each claim* for the court to decide whether there is a substantial difference between the state's law where the tort occurred and Kansas's law, and if so, whether that state's law violates Kansas's public policy.

tort liability.  It also argues that its limited warranty agreement bars plaintiffs' breach of implied warranty claim (Count I).

Defendant contends that its limited warranty expressly and conspicuously disclaims all implied warranties and tort liability.  To support this argument, defendant cites an exhibit from plaintiffs' Complaint (Doc. 63-15 at 2) and attaches "all versions of the warranty of which [defendant] is aware[,]" concluding that "all of [the] warranties that could apply share the same limitations on liability."  Doc. 70 at 14 n.5; *see also* Doc. 70-1 at 2 (Jones Aff. ¶ 4) (affidavit of defendant's counsel attaching "representative examples of standard sales contract for the subject aircraft model line from 2001 to the present").  Defendant contends that the following limited warranty represents the agreement all plaintiffs entered when they purchased their Aircraft:

> **TO THE EXTENT ALLOWED BY APPLICABLE LAW, THIS LIMITED WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESSED OR IMPLIED IN FACT OR BY LAW, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  THE REMEDIES OF REPAIR OR REPLACEMENT, AS ABOVE SET FORTH, ARE THE ONLY REMEDIES UNDER THIS LIMITED WARRANTY.  [DEFENDANT] DISCLAIMS ANY OBLIGATION OR LIABILITY WHETHER IN CONTRACT OR IN TORT (AND WHETHER FOR NEGLIGENCE, STRICT LIABILITY, PRODUCT LIABILITY OR OTHERWISE), INCLUDING LOSS OF USE OF THE PRODUCT WARRANTED, LOSS OF TIME, INCONVENIENCE, COMMERCIAL LOSS OR ANY OTHER DIRECT, CONSEQUENTIAL, SPECIAL OR INCIDENTAL DAMAGES.  THIS WARRANTY IS IN LIEU OF ANY OTHER OBLIGATION OR LIABILITY OF [DEFENDANT] OF ANY NATURE WHATSOEVER BY REASON OF THE MANUFACTURE, SALE OR LEASE OF SUCH AIRCRAFT PRODUCTS[.]**

Doc. 63-15 at 2 (16.1 Cessna's Limited Warranty – Single Engine Piston Aircraft).  Then, defendant argues, courts in Kansas and in Oregon "routinely dismiss breach of implied warranty claims in circumstances involving similar or less conspicuous language than the disclaimer at

issue here."[5]  Doc. 70 at 17.  The court agrees that both Kansas and Oregon law permit

sophisticated parties to bargain away an implied warranty of merchantability.  *See Griffitts &*

---

[5]        Defendant argues that Kansas or Oregon law governs each of plaintiffs' contract claims.
Kansas's choice of law principles provide, "[w]here the parties to a contract have entered an agreement
that incorporates a choice of law provision, Kansas courts generally [apply] the law chosen by the parties
. . . ."  *Brenner v. Oppenheimer & Co. Inc.*, 44 P.3d 364, 375 (Kan. 2002).  Plaintiffs didn't attach each
plaintiff's contract to their Complaint.  But defendant here attaches contracts to its Motion to Dismiss—
Doc. 70-1 (Jones Aff.)—in attempt to "capture a representative sample of versions of the standard
contract that could potentially apply to aircraft in the subject model line of aircraft involved in this
litigation."  *Id.* at 2 (Jones Aff. ¶ 4).  This sample includes six contracts including Oregon choice of law
provisions, and six contracts with Kansas choice of law provisions.  *Id.* at 2–6 (Jones Aff. ¶¶ 5–16).

        Defendant argues that the court may consider the contracts it submitted because plaintiffs'
Complaint refers to (but doesn't attach) contracts central to their case—contracts for the Aircraft.  *See
Kestrel Holdings I, L.L.C. v. Learjet Inc.*, 316 F. Supp. 2d 1071, 1075 (D. Kan. 2004) (explaining that "it
is accepted practice, if a plaintiff does not incorporate by reference or attach a document to its complaint,
but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may
submit an indisputably authentic copy to the court to be considered on a motion to dismiss." (internal
citation and quotation marks omitted)).  Defendant also contends that it isn't "aware of any purchase
agreement in the Cessna TTx product line that does not specify Kansas or Oregon law."  Doc. 70 at 11
n.4.

        Plaintiffs dispute "the notion that any one of these contracts are 'indisputably authentic' copies to
which each of the approximately 700 Plaintiffs agreed" and argue that the choice of law analysis is
premature at this stage.  Doc. 82 at 9.  Plaintiffs contest that the exemplar contracts apply to all their
claims or that they all agreed to a Kansas or Oregon choice of law provision.  Plaintiffs urge the court not
to consider defendant's arguments on the merits until they can establish the factual record to determine "if
any contracts were formed, if they included Choice of Law provisions" and if not, whether the court
should apply *lex loci contractus*, *i.e.*, to determine the jurisdiction where the parties formed contracts and
apply that state's law.  Doc. 82 at 9 (citing *Hall-Kimbrell Env't Servs., Inc. v. Archdiocese of Detroit*, 878
F. Supp. 1409, 1414 n.3 (D. Kan. 1995) (further citations omitted)).

        Defendant, unamused by plaintiffs' response, argues that plaintiffs' Complaint alleges an
"express warranty" on behalf of all plaintiffs—meaning plaintiffs claimed that they are subject to
warranties.  *See* Doc. 63.  Also, plaintiffs attach an "express warranty" (Doc. 63-15) and the court thus
should take these pleadings (asserting that plaintiffs are subject to the warranty—the warranty they
attached to their Complaint) at face value.  Defendant also argues that plaintiffs' argument that they need
additional discovery to determine "if any contracts were formed" is problematic given that plaintiffs filed
748 warranty claims.  Defendant asks the court not to reward plaintiffs' deficient pleadings.

        Defendant's points are well taken, and plaintiffs provide no evidence or convincing argument
other than speculation that some other state's law might apply to some agreements between plaintiffs and
defendant.  Most likely, Kansas or Oregon law will govern any contractual disputes in this case.  And the
parties' dispute—about the applicability of these contracts' choice of law provisions—at this stage in the
proceedings, is largely inconsequential.  That's because applying either Kansas or Oregon law at this
stage doesn't dispose of the claims.  So, the court applies Kansas and Oregon law to defendant's

*Coder Custom Chopping, LLC v. CNH Indus. Am. LLC*, 438 F. Supp. 3d 1206, 1238 (D. Kan. 2020) ("Under Kan. Stat. Ann. § 84-2-316(2), a seller may exclude or modify the implied warranty of merchantability if the language 'mention[s] merchantability' and, if in writing, it is 'conspicuous.' '[A]ll implied warranties are excluded by expressions like "as is," "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty.'" (quoting Kan. Stat. Ann. § 84-2-316(3))); *see also* Or. Rev. Stat. Ann. § 72.3160(2) (parties may "exclude or modify the implied warranty of merchantability" as long as the agreement is "a writing and conspicuous."); *Roberson Motors, Inc. v. Cooper Lighting, LLC*, No. 6:20-CV-02115-MC, 2022 WL 16963844, at *5–6 (D. Or. Nov. 16, 2022) (enforcing defendant manufacturer's limited warranty clause under Or. Rev. Stat. Ann. § 72.3160).

Defendant argues that this limited warranty's written exclusion of implied warranties is "conspicuous" under Kan. Stat. Ann. § 84-2-316(2) and Or. Rev. Stat. Ann. § 72.3160. The court agrees with defendant on this point. This limited warranty explicitly disclaims "any implied warranty of merchantability or fitness" and "any other warranties, express or implied[.]" Doc. 63-15 at 2 (16.1 Cessna's Limited Warranty – Single Engine Piston Aircraft). This disclaimer is typed in bolded font in full capital letters—contrasting with the typeface of the rest of the document—and plainly states that it excludes implied warranties. *See* Kan. Stat. Ann. § 84-1-201(10) (defining "conspicuous" as "written, displayed or presented [so] that a reasonable person against which [the provision] is to operate ought to have noticed it"); *Orica New Zealand Ltd. v. Searles Valley Minerals Operations Inc.*, No. 04-2310-KHV, 2005 WL 387659, at *1 (D.

---

argument here, but doesn't preclude either party from demonstrating that a different law should apply to any particular plaintiff's claim moving forward in the proceedings.

Kan. Feb. 17, 2005) (concluding warranty disclaimer in ten page distribution agreement was conspicuous where bulk of agreement was lowercase, but warranty provisions were in all capital letters and "quickly jump to the reader's eye"); *see also Roberson Motors*, 2022 WL 16963844, at *5–6 (applying Oregon law, holding enforceable defendant's limited liability clause in bold, capital letters, excluding liability for implied covenants).

But even so, the court can't dismiss plaintiffs' claims based on this limited liability clause (from Doc. 63-15), at this stage in the proceedings.  Plaintiffs urge the court to deny defendant's motion based on the argument that this limited warranty precludes their claims because, in plaintiffs' view, it's unclear (1) whether every contract between defendant and the hundreds of plaintiffs incorporated the limited warranty and (2) whether this limited warranty provides the *only* warranty to Aircraft purchasers.  Plaintiffs argue that defendant can't support its assumption that plaintiffs' exhibit (Doc. 63-15) as quoted above represents the warranty presented to every purchaser, and every purchaser accepted that warranty.  Plaintiff argues that one reason defendant's argument is flawed is because the cited warranty (Doc. 63-15) is a 2007 warranty, and defendant manufactured most of plaintiffs' Aircraft before 2007.

Next, plaintiffs argue, defendant must pursue its legal argument—that this limited warranty is the only warranty that applies to each plaintiff—as an affirmative defense.  Plaintiffs argue that defendant hasn't adduced evidence that this limited warranty is the only warranty that applies, and plaintiffs' Complaint disputes this conclusion through allegations of extensive post purchase guarantees.  *See* Doc. 63 at 160–67 (Third Am. Compl. ¶¶ 724–32, 741–47).  The court agrees with plaintiffs.

Plaintiffs' allegations—which, at this stage, the court accepts as true—survive defendant's Motion to Dismiss.  Plaintiffs allege that defendant promised the owners and

15

operators of the Aircraft that it would repair all window cracks that emerged during the Aircraft's initial warranty period. *Id.* at 161 (Third Am. Compl. ¶ 730). And indeed, in 2010, a director at defendant's company issued a letter promising that once defendant had a "proven method for long term repair" it would "pay for materials and labor to repair cracking" of plaintiffs' Aircraft, and that this credit would "apply to any aircraft that was in warranty" when defendant purchased the Aircraft Type Certificate. *Id.* at 166 (Third Am. Compl. ¶ 744). Plaintiffs sufficiently allege that defendant created explicit or implied warranties in addition to— or contradicting—those documented in plaintiffs' purchase agreements.[6] These post purchase guarantees preclude the court from deciding, at this stage, that a 2007 agreement (one that is debatably not applicable to every claim) precludes all implied warranty and tort claims against each one of the 748 plaintiffs. Thus, the court denies defendant's motion as it relies on the limited warranty argument.

**C. Did plaintiffs fail to plead fraud as Rule 9(b) requires?**

Finally, defendant argues that plaintiffs' fraud claim (Count III) fails to plead fraud with particularity as Fed. R. Civ. P. 9(b) requires. Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." A claim of fraudulent inducement requires the following elements:

> (1) defendant made an untrue statement of existing material fact, (2) defendant knew that the statement was untrue or recklessly made it with disregard for the truth, (3) defendant made the statement with the intent to induce plaintiffs to act on the statement, (4) plaintiffs justifiably relied on the statement to their detriment and

---

[6]     Plaintiffs don't cite any case law supporting their position. But they do argue that six of the seven cases defendant relies on decide the issue—*i.e.*, enforcing a limited warranty to dismiss claims—at the summary judgment stage. The single case defendant cites that decides this issue at the motion to dismiss stage, *Orica New Zealand Ltd. v. Searles Valley Minerals Operations Inc.*, No. 04-2310-KHV, 2005 WL 387659, at *1 (D. Kan. Feb. 17, 2005), involved one, undisputed transaction. Here, the parties dispute whether the warranty relied on by defendant applies to each transaction, and whether it's the only warranty that applies to all transactions.

(5) plaintiffs sustained injury as a result of their reliance. *BHC Dev., L.C. v. Bally Gaming, Inc.*, 985 F. Supp. 2d 1276, 1289 (D. Kan. 2013) (citing *Stechschulte v. Jennings*, 298 P.3d 1083, 1096 (Kan. 2013)).

Defendant's argument on this front is twofold. *First*, defendant argues, the alleged misrepresentations in the Complaint are only relevant to the question of tolling statutes and can't support an independent fraud claim. *Second*, defendant argues that plaintiffs have failed to specify when, by whom, and to whom, any allegedly fraudulent statements were made to plaintiffs. And plaintiffs have failed to allege how each plaintiff detrimentally relied on any allegedly fraudulent representation. The court addresses these two arguments, in sequence, below.

Defendant first argues that plaintiffs' Complaint only uses the words "fraud" or "fraudulent" in the "Tolling Allegations" section—arguing that defendant engaged in fraudulent concealment that delayed plaintiffs from taking legal action. Doc. 70 at 20 (citing Doc. 63 at 166–68 (Third Am. Compl. ¶¶ 747, 751–53)). Defendant argues that the only remedy for this type of claim is tolling the relevant statutes of limitation. But plaintiffs' Complaint—alleging misrepresentation about whether defendant would repair the cracking (*see* Doc. 63 at 164–68 (Third Am. Compl. ¶¶ 738, 741–47, 751–54))—doesn't establish a freestanding claim for "fraudulent inducement" to "purchase . . . the Aircraft." *Id.* at 173–75 (Third Am. Compl. ¶¶ 767–77). Instead, these allegations only support a claim that defendant misrepresented whether it would repair the Aircraft, and only affect the question whether defendant induced plaintiffs to refrain from taking legal action—and not whether defendant induced them to buy the Aircraft in the first place. Thus, defendant argues, plaintiffs fail to state a claim for fraudulent inducement to purchase the Aircraft.

Predictably, plaintiffs disagree.  They argue that the Complaint alleges that defendant knew the cracking defect was more serious than it communicated to plaintiffs, and defendant minimized the severity of the defect to induce plaintiffs to "purchase and/or to continue to own the Aircraft." Doc. 82 at 14 (citing Doc. 63 at 46–47, 160–62, 164, 174 (Third Am. Compl. ¶¶ 2–4, 9, 723–32, 738, 771–72)).  The portions of the Complaint plaintiffs cite allege defendant induced plaintiffs to "continually wait for a non-existent repair," (Doc. 63 at 46 (Third Am. Compl. ¶¶ 2–4)); defendant hid behind "false assurances that the defects [were] 'cosmetic' in nature" (Doc. 63 at 47 (Third Am. Compl. ¶ 9)); defendant "repeatedly told [plaintiffs] that [defendant] would fix the 'problem with window cracking'" and "made misrepresentations for the purpose of inducing [plaintiffs] to not take action" (*id.* at 160 (Third Am. Compl. ¶¶ 725–26); defendant "represented to the Bankruptcy Court" that it would correct the defect and repair the cracks (*id.* at 164 (Third Am. Compl. ¶ 738)); and defendant made "false representations with the express intention of inducing action by [plaintiffs] to purchase or continue to purchase or own the Aircraft" (*id.* at 174 (Third Am. Compl. ¶ 772)).

Count III alleges that defendant failed to disclose defects and misrepresented that the "Aircraft was free of defects . . . and had a life span that matched that of the airframe of the Aircraft, without need for major repair or rebuild." *Id.* at 173 (Third Am. Compl. ¶ 768.a.). Only one of plaintiffs' allegations—that defendant made "false representations with the express intention of inducing action by [plaintiffs] to purchase or continue to purchase or own the Aircraft" (*id.* at 174 (Third Am. Compl. ¶ 772))—supports a claim that defendant fraudulently induced plaintiffs to *purchase* the Aircraft.

But still, plaintiffs' other allegations support a fraudulent inducement claim:  They allege that defendant's misrepresentations induced them to *continue to own* their Aircraft and sustain

harm from doing so.  *See id.*  Their allegations support a theory that defendant's false

representations about repairs, and plaintiffs' reasonable reliance on these statements caused

plaintiffs to sustain damages in the form of "diminution of value, loss of use, cost of repair, loss

of all value of the aircraft, physical damage to the aircraft, and loss of the benefit of the bargain

[p]laintiffs entered into when purchasing the Aircraft."  Doc. 63 at 174–75 (Third Am. Compl. ¶

776).  Thus, while plaintiffs may have failed to state a claim for fraudulent inducement for

*purchasing* the Aircraft, plaintiffs still have alleged a plausible claim for fraudulent inducement.

Plaintiffs have alleged sufficiently that they "justifiably relied on the statement to their

detriment" and "sustained injury as a result of their reliance."  *BHC Dev., L.C.*, 985 F. Supp. 2d

at 1289.

Defendant cites no legal authority that a claim for fraudulent inducement must concern

*purchasing* a product.  Just the opposite, courts have permitted fraudulent inducement claims to

proceed based on a fraud that allegedly induced the plaintiff to refrain from acting.  *See TP ST

Acquisition v. Lindsey*, No. 2:21-CV-02020-JAR-JPO, 2021 WL 1750872, at *6 (D. Kan. May 4,

2021) ("[o]ne who makes a fraudulent misrepresentation is subject to liability for pecuniary loss

. . . [t]o the persons or class of persons whom he intends or has reason to expect to act or to

*refrain from act[ing]* in reliance upon the misrepresentation." (quoting *Griffith v. Byers Constr.

Co. of Kan., Inc.*, 510 P.2d 198, 204 (Kan. 1973) (citing Restatement (Second) of Torts § 531

(1977)) (further citations omitted) (emphasis added))).  The court thus declines to dismiss

plaintiffs' claim based on defendant's first argument.

Defendant's next argument contends that even if plaintiffs' allegations could sustain a

freestanding claim of fraudulent inducement, they'd still fail to satisfy Rule 9(b).  That's so,

defendant argues, because the Complaint fails to allege who made allegedly false

representations, when they did so, and to whom they were made.  Defendant contends that the

Complaint fails to explain how each plaintiff relied on any representation to their detriment.

Again, predictably, plaintiffs disagree.  They argue that the following specific examples

meet their threshold burden of alleging fraud:

- On August 12, 2010, defendant's director of field operations mailed a letter to plaintiff Steve Masters acknowledging reports of cracking and assuring Mr. Masters that defendant would pay for materials and labor to repair cracking.  But defendant never did. Doc. 63 at 166 (Third Am. Compl. ¶ 744); Doc. 63-8 (Masters Emails); Doc. 63-11 (Masters Letter).

- On February 11, 2009, defendant mailed a letter to plaintiff John Stenger, advising Mr. Stenger that defendant was aware of the cracking, and that defendant was revising its initial service bulletin to fix the problem, and would announce a new service bulletin and plan.  Doc. 63 at 166 (Third Am. Compl. ¶ 746); Doc. 63-9 (Stenger Letter).

- In 2014, plaintiff Bogdan Cocosel and defendant exchanged emails about the cracking issue, and defendant reassured plaintiff Cocosel that it was developing a solution to the problem.  Doc. 63 at 168 (Third Am. Compl. ¶ 754); Doc. 63-14 (Cocosel Emails).

Plaintiffs argue that these examples represent the "tip of the iceberg" of fraud, Doc. 82 at 13, and

thus, the court should deny defendant's motion to allow them to conduct discovery and reveal

more examples of misrepresentation.  Alternatively, plaintiffs ask the court for leave to amend

their Complaint to allege facts sufficient to address any defect in Count III.

Defendant argues that these collected communications from just three plaintiffs (even

combined with general allegations) isn't enough for Rule 9(b).  The court agrees with defendant.

Plaintiffs chose to file this case as one making 748 individual claims.  It's not a class action.

Plaintiffs can't have it both ways.  Plaintiffs don't get to survive defendant's Motion to Dismiss

based on a contract provision—by claiming defendant hasn't shown that the contract is

representative of each individual plaintiff—and then promptly turn around and present three

examples of alleged misrepresentation and claim that these examples represent the other 745

claims.  In short, plaintiffs must plead *each* claim of fraud with particularity.  They fail to do so.

Thus, the court agrees with defendant that it should dismiss the 745 claims not pleaded with particularity as required by Rule 9(b). Plaintiffs request leave to amend in the event the court finds its Complaint insufficient. *See* Doc. 82 at 15. The court declines to grant this request here. *See Johnson v. CMC Prop. Leasing, Inc.*, No. 12-1309-SAC, 2012 WL 6025601, at *7 (D. Kan. Dec. 4, 2012) (denying request for leave to amend because plaintiffs made only "a bare request in their response to a motion to dismiss asking for leave but offer[ed] no particular grounds for the request as to even constitute an application for leave" and the request didn't "meet the requirements of D. Kan. Rule 15.1," nor provide "sufficient notice on which to base a ruling" granting leave to file an amended pleading (citation and internal quotation marks omitted)). Our court's local rules require a party who seeks leave to amend a pleading to file a *separate* motion seeking leave and that motion must "(1) set forth a concise statement of the amendment or leave sought; (2) attach the proposed pleading or other document; and (3) in the case of a proposed amended pleading . . . attach a redlined version of the proposed amendment that shows all proposed changes to the pleading; and (4) comply with the other requirements of D. Kan. Rule 7.1." D. Kan. Rule 15.1(a).

But the court also recognizes that Fed. R. Civ. P. 15(a)(2) directs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). And, refusing to grant leave to amend "is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Thus, the court dismisses these claims without prejudice, and denies plaintiffs' current half-hearted motion for leave to amend without prejudice. Plaintiffs may file a separate

motion for leave to amend in accordance with D. Kan. Rule 15.1(a).  If they wish to do so, they must file this motion within 21 days of this Order.

### D.  Conclusion

In sum, the court grants defendant's Motion to Dismiss Count III (for 745 of the 748 plaintiffs' claims—excluding the claims of plaintiffs Masters, Stenger, and Cocosel) because plaintiffs have failed to plead their fraud claims with particularity as required by Rule 9(b).  The court denies defendant's Motion to Dismiss all other claims because plaintiffs have alleged plausible claims of negligence, strict liability, and violations of implied warranties.  At this stage in the proceedings, defendant can't show that plaintiffs' claims fail as a matter of law.

The court next turns to defendant's final request:  a motion for a more definite statement of the claim asserted in Count VIII.

### IV.   Defendant's Motion for a More Definite Statement

Also before the court is defendant's Motion for a More Definite Statement (Doc. 67), plaintiffs' response (Doc. 80), and the parties' briefing on this issue (Docs. 68, 81, 83).  After the parties completed briefing, plaintiffs filed a Motion for Leave to File Sur-Reply (Doc. 85).  For the following reasons, the court grants defendant's motion (Doc. 67), denies its request for an oral argument as moot, and denies plaintiffs' request for leave (Doc. 85) as moot.

Under Federal Rule of Civil Procedure 12(e), defendant asks the court to order plaintiffs to provide a more definite statement of Count VIII—"Violation of the Deceptive Trade Practices."  Doc. 63 at 180–81 (Third Am. Compl. ¶¶ 802–07).  This count alleges that defendant "violated Deceptive Trade Practices and [plaintiffs are] therefore entitled to any and all relief under said applicable acts."  *Id.* at 181 (Third Am. Compl. ¶ 803).  But it doesn't explain what it means by "Deceptive Trade Practices" or "applicable acts."  *Id.* at 180–81 (Third Am. Compl. ¶¶

802–07).  Below, the court first recites the legal standard for evaluating a motion under Fed. R.

Civ. P. 12(e), then it addresses each parties' arguments.

### A.  Legal Standard for Rule 12(e) More Definite Statement

A party may move for a more definite statement under Rule 12(e) when the complaint is

"so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P.

12(e).  Rule 12(e) motions generally are disfavored and "are properly granted only when a party

is unable to determine the issues" to which he must respond.  *Resolution Tr. Corp. v. Thomas*,

837 F. Supp. 354, 356 (D. Kan. 1993); *see also Smith v. Swift Transp., Co.*, No. 13-2247-RDR,

2013 WL 5551804, at *3 (D. Kan. Oct. 7, 2013) (granting Rule 12(e) motion in part because

"framing a response to the plaintiff's complaint would be extremely difficult").  A court

shouldn't grant a motion for a more definite statement "merely because the pleading lacks

detail;" instead, the court should determine "whether the claims alleged are sufficiently specific

to enable a responsive pleading in the form of a denial or admission."  *Advantage Homebuilding,

LLC v. Assurance Co. of Am.*, No. 03-2426-KHV, 2004 WL 433914, at *1 (D. Kan. Mar. 5,

2004).

Also, a party can't invoke Rule 12(e) as a method of pretrial discovery.  *See Hix Corp. v.

Nat'l Screen Printing Equip., Inc.*, No. 00-2111-KHV, 2000 WL 1026351, at *1 (D. Kan. July 6,

2000) (denying motion for more definite statement because "the appropriate method to determine

more specific information about the allegations is through the discovery process"); *see also

Advantage Homebuilding*, 2004 WL 433914, at *1 (explaining that Rule 12(e) motions are

generally disfavored "in light of liberal discovery available under the federal rules").  The

decision whether to grant or deny a motion for more definite statement lies within the sound

discretion of the court. *Graham v. Prudential Home Mortg. Co., Inc.*, 186 F.R.D. 651, 653 (D. Kan. 1999).

## B. Analysis

Defendant argues that it can't reasonably respond to Count VIII of the Complaint because that claim, in its present form, only alleges a violation of "Deceptive Trade Practices" but doesn't clarify whether the claim is statutory, based in common law, based in the laws of one or several states, or common or disparate across the hundreds of plaintiffs. *See* Doc. 63 at 180–81 (Third Amend Compl. ¶¶ 802–05). Defendant also argues that plaintiffs provide no theory of the claim, nor any discernible elements of a claim. Thus, defendant argues, plaintiffs' Complaint fails to provide "fair notice" required by the rules. *See Twombly*, 550 U.S. at 555 ("Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (internal citation and quotation marks omitted)). And so, defendant argues, framing a response to this claim would prove "extremely difficult," and the court thus should require plaintiffs to provide a more definite statement of this claim. *See Smith*, 2013 WL 5551804, at *3.

Defendant argues that plaintiffs' pleadings have forced it to guess about the nature of the claim. And, it also argues, this court has granted Rule 12(e) motions in cases that have presented similar claim discernability issues. *See, e.g.*, *Ernst v. Nationwide Mut. Ins.*, No. 20-CV-02340-TC-TJJ, 2021 WL 8444353, at *1 (D. Kan. Mar. 26, 2021) (granting Rule 12(e) motion where plaintiff "did not identify the insurance policy on which he sues, the policy provisions he relies on to establish coverage, and which policy terms [defendant] allegedly breached"); *Smith v. Swift Transp., Co.*, No. 13-2247-RDR, 2013 WL 5551804, at *3 (D. Kan. Oct. 7, 2013) (granting Rule

12(e) motion where "framing a response to the plaintiff's complaint would be extremely difficult" because plaintiff's claims were "difficult to discern"); *Ewing v. Andy Frain Sec. Co.*, No. 11-CV-02446-JAR-DJW, 2012 WL 162379, at *2 (D. Kan. Jan. 19, 2012) (granting Rule 12(e) motion where plaintiff's "causes of action and factual bases are not clearly stated" such that defendant couldn't "fully answer" and "include any appropriate defenses"); *Creamer v. Ellis Cnty. Sheriff Dep't*, No. 08-4126-JAR, 2009 WL 484491, at *2 (D. Kan. Feb. 26, 2009) (granting Rule 12(e) motion to require plaintiff to amend complaint to "indicate *how* each defendant violated her rights by providing factual allegations that are sufficiently specific to enable defendants to form answers to her complaint"); *Lowe v. Experian*, No. CIV. A. 03-2046-CM, 2004 WL 1004872, at *1 (D. Kan. Mar. 31, 2004) ("When a complaint fails to plead all elements of the cause of action, fails to plead any facts supporting the elements of the cause of action, or states the claim in a vague or ambiguous manner, the court may dismiss the complaint. As an alternative to this harsh remedy, and pursuant to Rule 12(e), the court may order plaintiffs to file a more definite statement, re-pleading their claim in accordance with Fed. R. Civ. P. 8.").

Plaintiffs' response doesn't exactly oppose defendant's motion, but instead, plaintiffs vaguely ask the court to refrain from granting it. Plaintiffs essentially argue that all the jurisdictions where they reside have adopted deceptive trade practice acts, and it's too early in the case to know which jurisdictions' laws they invoke for their claims. In their response to the motion (Doc. 80), plaintiffs "agree that [d]efendant is entitled to more specificity as to the Count VIII" but argue that the choice of law issue creates challenges that plaintiffs would rather not deal with until "discovery and further investigations[.]" Doc. 80 at 1. Plaintiffs suggest that the court "allow more discovery to take place so that jurisdictional questions regarding Choice of Law . . . may be more refined[.]" *Id.* at 3. Plaintiffs also inform the court that they've filed a

Memorandum of Law (Doc. 81) though it's "not specifically in opposition to [d]efendant's motion[.]" *Id.*

Plaintiffs' memorandum explains that they "understand the [d]efendant's concern regarding their ability to answer counts sounding in unfair trade practices without reference to a specific statute" but "suggest that, until parties have a resolution regarding how Choice of Law is to be handled in this matter," defendant should "have the burden of defending against multiple unfair trade practice act statutory schemes." Doc. 81 at 7. Plaintiffs cite no case law to support their position which, in essence, contends that when a case presents a tricky choice of law issue—as one might expect from a case involving hundreds of plaintiffs from "48 'plus' jurisdictions"—that a vague Complaint suffices until the parties, or the court, come to some type of choice of law resolution. *See* Doc. 81 at 7. Plaintiffs don't even attempt to argue that Rule 12(e) supports their position. *See id.*

Defendant asks the court to grant its "unopposed motion." Doc. 83 at 4. The court agrees with defendant's "unopposed" characterization. It also finds that defendant's Rule 12(e) arguments and case law from this district support the decision to grant defendant's Motion for a More Definite Statement. Thus, the court grants this motion (Doc. 67) and orders the action specified at the end of this Order.

## C.  Conclusion

It's not the court's role to provide plaintiffs with guidance about how to plead their case. The court can't abstractly opine about what choice of law rules might apply, pre-discovery, so that plaintiffs can craft their Complaint accordingly. Plaintiffs chose to bring this case as 748 individual claims. And plaintiffs—as captains of the Complaint—must deal with the consequences of that choice. For these reasons, the court grants defendant's Motion for a More

Definite Statement (Doc. 67).  It orders plaintiffs to file an amended complaint—specifying what law or laws plaintiffs bring Count VIII under—within 21 days of the date of this Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Partial Motion to Dismiss (Doc. 69) is denied in part, and granted in part, as explained in this Order.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant's Motion for a More Definite Statement (Doc. 67) is granted, as explained in this Order.  Defendant's request for an oral argument on this issue is denied.  The court orders plaintiffs to file an amended complaint specifying what claim Count VIII is making within 21 days of the date of this Order.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiffs' Motion for Leave to file Sur-Reply (Doc. 85) is denied.

**IT IS SO ORDERED.**

**Dated this 16th day of May, 2023, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
