**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ZONE FIVE, LLC, *et al*., | |
| Plaintiffs, | |
| v. | Case No. 20-1059-DDC-KGG |
| TEXTRON AVIATION, INC., | |
| Defendant. | |

**MEMORANDUM & ORDER GRANTING MOTION TO COMPEL
AND REPORT & RECOMMENDATION ON MOTION TO DISMISS FOR
<u>FAILURE TO MAKE DISCOVERY</u>**

Now before the Court is Defendant's Motion to Compel Discovery and Dismiss for Failure to Make Discovery with supporting memorandum. (Docs. 120, 121.) Plaintiffs oppose the motion and Defendant has replied. (Docs. 155, 158.) After review of the parties' submissions and exhibits thereto, the Court **GRANTS** Defendant's motion to compel (Doc. 120) and **recommends** to the District Court that Plaintiff's claims be **DISMISSED**, as set forth herein, for failure to make discovery.

**<u>BACKGROUND</u>**

The present lawsuit was initially filed on July 22, 2019, in the District of Rhode Island. (Doc. 1.) The case was transferred to the District of Kansas on March 2, 2020, upon joint motion. (Doc. 25.)

1

I.      **Plaintiffs' Allegations.**

The subject of this lawsuit is the Cessna TTx (hereinafter "Aircraft") – a single engine, fixed-gear, general aviation aircraft – that was purchased by hundreds of Plaintiffs. (Doc. 63, at 45-46.) Defendant designed and manufactured the Cessna TTx. (*Id.*, at 160.) Each Plaintiffs' Cessna TTx Aircraft allegedly suffered cracks, to varying degree, in and around the windows, windscreen, and pilot and passenger handles, and through the window glass. (*Id.*, at 161.) At times, this cracking allegedly caused complete failures of this airplane. (*Id.*)

The case, which is not being litigated as a class action, involves more than 700 individual Plaintiff-owners of Cessna aircraft who are seeking damages for alleged defects in their aircraft. Plaintiffs have brought eight claims against Defendant – (1) breach of implied warranty, (2) breach of express warranty, (3) fraud, (4) negligent misrepresentation, 5) strict liability in manufacturing, (6) strict liability in design, (7) negligence in manufacturing, (8) negligence in design, and (9) deceptive trade practices. (Doc. 168, Fourth Amended Complaint.)

Plaintiffs allege that Defendant designed and manufactured this Aircraft with a latent defect causing cracking in the windows, windscreen, and adjacent Aircraft skin. They allege these cracks caused serious safety of flight issues that could cause injury or death. Plaintiffs contend they incurred costs resulting from repair to, or loss of use of, the Aircraft due to grounding for safety reasons resulting from these cracks.

Plaintiffs allege Defendant promised to correct and repair the defects multiple times but failed to do so.  Defendant, owner of an aircraft Type Certificate, is required by the Federal Aviation Administration ("FAA") to protect and educate consumers as to any problems with design, system, or dangerous trends within the model.  Plaintiffs contend that Defendants gave false assurances that the issues with the Aircraft were "cosmetic" and presented no structural or safety issues.

Plaintiffs continue that Defendant owed a duty to provide the FAA, as well as owners and operators of the Aircraft, with information about the safety, airworthiness, maintenance, service requirements, and any field difficulties known. Plaintiffs contend that Defendants allegedly knew of the Aircraft's pervasive problem.  It is also alleged that Defendant knew or should have known the cracking created a potential flight safety issue for the Aircraft.  The defects allegedly decreased the value of the Aircraft, which Plaintiffs purchased at a premium price.

Plaintiffs allege that Defendant claimed to be developing a solution that Plaintiffs believe was false.  Plaintiffs contend they each operated the Aircraft in a reasonably prudent manner and maintained the Aircraft in accordance with FAA regulations, "Service Literature," and "Airworthiness Directives."  Plaintiffs believe they would have paid substantially less for the Aircraft or purchased a different plane if Defendant had provided accurate information.

## II.    Defendant's Motion to Compel and/ or Dismiss (Doc. 120).

In the present motion, Defendant moves to compel Plaintiffs to respond to

discovery and asks the Court to dismiss Plaintiffs for failure to complete discovery. (Doc. 120.)  The discovery at issue was served by Defendant on November 23, 2022, seeking information relating to Plaintiffs and their claims.  Defendant contends the information sought is "necessary not only for [it] to mount a defense, but also for there to be any hope of a manageable trial."  (Doc. 121, at 7.)

Plaintiffs were given an extension until February 20, 2023, to respond to the initial discovery requests.  On that date, however, " Plaintiffs' counsel emailed [Defendant] (1) a single response to the Interrogatories on behalf of all Plaintiffs; (2) a single response to the Requests for Admission on behalf of all Plaintiffs; and (3) a single response to the Requests for Production on behalf of all Plaintiffs (the 'Global Responses')."  (*Id.*, citing Doc. 121-1, at 44-126.)  Defendant argues that, despite receiving a two-month extension to respond to the discovery, Plaintiffs' "Global Responses" were deficient in multiple ways, as discussed more specifically, *infra*.

The day after receiving the Global Responses, defense counsel contacted Plaintiffs' counsel to schedule a meet-and-confer, stating that "Plaintiffs provided zero substantive responses and ha[d] unilaterally attempted to give themselves an additional (and undefined) extension to respond to … basic and clearly relevant discovery."  (Doc. 121-1, at 128-29.)  The meet-and-confer occurred the next day, February 22, 2023, resulting in a letter from defense counsel summarizing its understanding of the parties' agreement.  Therein, Defendant indicated it understood Plaintiffs to agree that "each Plaintiff will produce all documents responsive to

[Defendant's] requests for production … and will produce complete and compliant responses to [the] requests for admission … and Interrogatories, on or before March 8, 2023." (*Id.*, at 131-32.) Defendant notes that this deadline would have equated to 105 days after the discovery was initially served.

Plaintiffs' counsel responded that same day, but, according to Defendant, "appeared to walk back any commitment to respond by March 8." (Doc. 121, at 8; citing Doc. 121-1, at 137-43.) Defendant responded by email the next day, asking for a yes or no response to the following question: "**Will each of the 748 Plaintiffs individually serve complete and compliant responses to Defendant's requests for production, requests for admission, and interrogatories and produce all responsive documents on or before March 8, 2023?**" (Doc. 121-1, at 145 (emphasis in original).) Although Plaintiff's counsel responded, counsel did not answer the question. (*Id.*, at 149.)

The parties conferred again on February 28, 2023, whereafter Defendant sent a letter to memorialize the telephone call. Therein, Defendant stated that "Plaintiffs' counsel confirmed that each Plaintiff will produce all documents responsive to Textron Aviation's requests for production … and will produce complete and compliant responses to Textron's requests for admission … and Interrogatories (including verifications), on or before March 8, 2023." (*Id.*, at 171.) Plaintiffs responded soon after, stating that they would merely be "**putting forth [their] best effort**" to respond by March 8, rather than committing to do so. (*Id.*, at 174

(emphasis in original).)  Plaintiffs asserted that Defendant's request for "complete and compliant" discovery responses was improper because that was a "subjective phrase."  (*Id*. at 174-75.)

The parties subsequently engaged in a mandatory D. Kan. Rule 37.1 discovery telephone conference with the undersigned Magistrate Judge on March 6, 2023.  That telephone conference resulted in a Minute Order that states in relevant part:

> Counsel have worked diligently to find ways to move this case forward, but disputes have arisen concerning both the scope and subject of discovery and the timing of Plaintiffs' responses to discovery.  The Court expressed opinions concerning substantive discovery issues and urged the parties to continue efforts to resolve those matters. However, to facilitate a more formal resolution of disputes the Court Orders as follows.  **Plaintiffs will provide complete formal responses to pending discovery by May 12, 2023**.

(Doc. 96, 3/6/23 Minute Order (emphasis added).)  Plaintiffs did not meet this clear and unequivocal deadline from the Court.

A subsequent telephone status conference with the Court was set for June 2, 2023.  (*Id*.)  The parties were instructed to be prepared to update the Court "concerning the status of discovery and outline any remaining disputes," and were instructed that the Court would set a briefing schedule to bring those disputes to the Court formally for resolution.  (*Id*.)   The parties were encouraged to continue to meet and confer during this time.  (*Id*.)  Following the June 2 telephone conference, the Court set a deadline of June 30, 2023, to file any motions relating to outstanding

discovery issues.  (Doc. 106, 6/2/23 text Order.)

Defendant filed the present motion on June 29, 2023.  (Doc. 120.)  Therein, Defendant generally asserts that, as of the filing, it had been four years since this case was originally filed in Rhode Island, more than seven months since Defendant "served discovery and began meet-and-confer efforts, and 49 days since the Court-ordered due date for Plaintiffs' discovery came and went."  (Doc. 121, at 5.)  That stated, as of the filing of Defendant's motion,

> around 100 Plaintiffs have not produced any documents; over 700 Plaintiffs have not produced any communications (Plaintiffs have produced just 30 communications in all); many of Plaintiffs' responses are – on their face – lawyer-drafted, copy-paste answers submitted on behalf of hundreds of differently situated Plaintiffs; Plaintiffs have relied on the kind of improper "conditional" and "boilerplate" objections that this Court has rebuked; and just 10% of Plaintiffs have verified interrogatory responses.

(*Id.*)

Defendant continues that "Plaintiffs assume they can rely on class-wide allegations and discovery to prop up individual claimants, but they cannot."  (*Id.*)  As specifically stated by the District Court, this is "not a class action." (Doc. 105, at 20.)  The District Court pointedly continued that Plaintiffs "chose to bring this case as 748 individual claims" and they "must deal with the consequences of that choice." (*Id.* at 26.)

Defendant argues that Plaintiffs should be treated "as the individual parties they are."   Further, Defendant asks the Court to "dismiss those Plaintiffs who have

chosen not to meaningfully participate in discovery," or "[a]t minimum, the Court should order prompt compliance on penalty of dismissal."  (Doc. 121, at 5.)

## ANALYSIS

Defendants have raised the following issues with Plaintiffs' discovery requests (or the lack thereof):  1) the vast majority of Plaintiffs have failed verified their Interrogatory responses in violation of Fed.R.Civ.P. 33(b)(5); 2) Plaintiffs have raised improper conditional objections to certain discovery request; 3) Plaintiffs have made improper boilerplate objections; 4) many of Plaintiff's responses are improperly open-ended; 5) Plaintiffs have failed to respond to Request for Production; 6) Plaintiffs have failed to produce requested communications; and 7) Plaintiffs have provided "cut & paste" responses to certain Interrogatories that were drafted by counsel rather than individualized responses drafted by the particular Plaintiffs.  (*See generally* Doc. 121.)  Each of these issues will be addressed by the Court in turn.

## I.    Verification of Interrogatories.

Federal Rule of Civil Procedure 33 requires interrogatories to be answered "under oath" and that the party who "makes the answers … must sign them." Fed.R.Civ.P. 33(b)(5).  It is well-established in this District that when a responding party fails to verify an interrogatory response under oath, that party must submit or resubmit the response with proper verification.  ***Azim v. Tortoise Cap. Advisors, LLC***, No.134-2267-DDC-JPO, 2015 WL 1268021, at *1 (D. Kan. Mar. 19, 2015)

(wherein a plaintiff was ordered to "resubmit … interrogatory responses with an attached verification page"); *Real v. Haney*, No. 06-3066-KHV-JPO, 2007 WL 1851283, at *1 (D. Kan. June 27, 2007).  Unverified interrogatory responses are not considered to be "competent evidence." *Stanley v. Sure Check Brokerage, Inc*., No. 14-2510-EFM, 2015 WL 5781987, at *1 (D. Kan. Oct. 1, 2015).

That stated, as of the filing of Defendants' motion, only 81 of the 700+ Plaintiffs had verified their interrogatory responses.  Plaintiffs' response indicates 95 Plaintiffs have served verifications with an additional 45 "verifications signed that are in the process of being served." (Doc. 155, at 7.)  Plaintiffs' counsel states they "continue to work to obtain from clients and serve verifications as they come in" and requests an additional 60 days to do so "before entering an order dismissing any individual plaintiffs who have failed to sign verifications." (*Id*.)

There is authority in this District for dismissing a case – brought by <u>one</u> Plaintiff – for failing to verify interrogatory responses.  *CCA Recordings 225 Litig. v. United States*, 2021 WL 4124655, at *2 (D. Kan. Sept. 9, 2021).  Defendant argues that because Plaintiffs have so failed "hundreds of times over makes their failure worse, not better." (Doc. 121, at 11.)  The Court agrees.

The Court notes the harsh nature of dismissal as relief. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992) (citations omitted) (holding that dismissal is an "extreme sanction appropriate only in cases of willful misconduct."). Further, in the case cited by Defendant, the plaintiff failing to provide verifications

9

had been given warning(s) that the continued failure would lead to dismissal. The Court notes that no such warning was explicitly given to Plaintiffs in the present case. That stated, on March 6, 2023 – more than **five months ago** – Plaintiffs were given a specific and unequivocal deadline of May 12, 2023, to provide complete formal responses to the underlying discovery. Thus, the Court **recommends to the District Court** that the claims of any Plaintiffs who have failed to provide verified answers to Defendant's interrogatories be **DISMISSED**.

## II.    Conditional Objections.

A "conditional response" or "conditional objection" to a discovery request "occur[s]when a party asserts objections, but then provides a response 'subject to' or 'without waiving' the stated objections." ***Westlake v. BMO Harris Bank N.A.***, No. 13-2300-CM-KGG, 2014 WL 1012669, *3 (D. Kan. March 17, 2014). Defendant argues that Plaintiffs have provided such improper, conditional objections to Interrogatories Nos. 4-6 and Requests for Admission 1-4.

Interrogatory No. 4 asks Plaintiffs to identify every "alleged misstatement or misrepresentation made by [Defendant] to You that you rely upon for any claim alleged in your Complaint regarding the Aircraft." Interrogatory No. 5 seeks a description of the "amount and type of all damages You seek to recover." Interrogatory No. 6 seeks identification of "each time that You or any other Person has flown Your Aircraft since July 22, 2019," including the "date, distance, and circumstances of each flight." (*See* Doc. 121, at 249-50.) All Plaintiffs have made

the same, or significantly similar, objections to these Interrogatories that then indicate responses will be given subject to and without waiving the objections.  (*Id*.)

Requests for Admission Nos. 1–4 seek admissions regarding if and when Plaintiffs filed warranty claims, whether individual Plaintiffs' aircraft have experienced cracking, and where the aircraft were manufactured.  (*Id*., at 256-60.) Plaintiffs have provided similar conditional objections to these RFAs.  (*Id*.)

Plaintiffs respond that Defendant's argument regarding these conditional objections "is blown wildly out of proportion."  (Doc. 155, at 8.)  This Court has, however, **repeatedly and uniformly** held that objections followed by a response "[w]ithout waiving objections" are "manifestly confusing (at best) and misleading (at wors[t]) and [have] no basis in the Federal Rules of Civil Procedure."  ***D.M. v. Wesley Med. Ctr., LLC***,  No. 18-2158-KHV-KGG, 2019 WL 2067363, at *1 (D. Kan. May 9, 2019) (quoting ***Sprint Commun. Co., L.P. v. Comcast Cable Commun., LLC***, No. 11-2684-JWL, 11-2685-JWL, 11-2686-JWL, 2014 WL 545544, at *2 (Feb. 11, 2014) (reaching this conclusion as to conditional responses raised in response to Requests for Production of Documents)).  The undersigned Magistrate Judge has **specifically and unequivocally** held that such conditional responses are "invalid," "unsustainable," and "violate common sense."  ***Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.***, No. 13-2150-CM-KGG, 2014 WL 2815515, at *3 (D. Kan. June 23, 2014) (internal citation omitted).

The Court sees no reason to allow Plaintiffs an exception in the present case.

The any such conditional objections to the above-referenced Interrogatories and Requests for Admission are hereby **overruled**.  Plaintiffs are directed to provide supplemental discovery responses removing the conditional objections.  Plaintiffs are directed to respond to the corresponding Interrogatories **without further objection** and to admit or deny the Requests for Admissions as contemplated by the Federal Rules of Civil Procedure.  Pursuant to subsection (a)(4) of Rule 36 regarding Requests for Admission, if a matter is not admitted, Defendants "must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed.R.Civ.P. 36(a)(4).[1]  The supplemental responses to these discovery requests are due within **thirty (30) days of the date of this Order**.

## III.   Boilerplate Objections.

"Boilerplate" or "blanket" objections are general objections either not linked to a specific request, or objections within a specific request but which are so general in nature that the requesting party cannot determine whether information or documents are being withheld pursuant to the objection.  *Nyanjom v. Hawker Beechcraft, Inc.*, No. 12-1461-JAR-KGG, 2014 WL 2135997, at *1 (D. Kan. May 22, 2014).  Such objections do not provide the requesting party or the Court any way to evaluate the

---

[1] The Rule continues that any denial "must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed.R.Civ.P. 36(a)(4).

validity of the objection, or any way to know whether or not information is being withheld pursuant to the objection. *Id.* Generally, such objections can be easily spotted because they either appear as introductory "General Objections," as discussed herein, that are not linked to a specific request or they are worded as objections "to the extent" or "insofar as" the request is objectionable. *Id*. As with conditional objections, addressed *supra*, this Court "has repeatedly condemned the use of 'boilerplate' or blanket objections." *Id*.

Plaintiffs have included numerous general objections – in a section conveniently labeled "General Objections – to Defendant's Interrogatories, Requests for Admissions, and Request for Production. (*See, e.g.*, Doc. 121-1, at 62-63, 87-89, 116-119.) As an example, General Objection No. 5 to Defendants' Interrogatories states,

> Plaintiffs object to defendant Textron's Interrogatories to the extent that they seek information that is vague, ambiguous, overly broad, unduly burdensome, not relevant to the claims or defenses involved in this litigation, and/or will not lead to the discovery of admissible evidence.

(Id., at 62.)

Plaintiffs do not deny the use of such boilerplate objections. Rather, their only response to Defendant's argument is that this subject was never raised during the meet & confer process, thus it has been waived. (Doc. 155, at 10.) Defendant has, however, established that the topic was addressed. (Doc. 158, at 5.) Either way, the general, boilerplate objections are **<u>clearly</u>** improper and are **OVERRULED**. The

Court orders supplemental answers **__not restricted by the objections__** to be served by each responding Plaintiff within **thirty (30) days of the date of this Order**.

## IV.   Open-Ended "Gathering Information" Responses.

The Federal Rules of Civil Procedure provide parameters as to what constitutes an appropriate response to discovery requests. An "evasive or incomplete disclosure, answer, or response" to a discovery request "must be treated as a failure to disclose, answer, or respond." Fed.R.Civ.P. 37(a)(4). As to interrogatories, the responding party "must, to the extent it is not objected to," answer "[e]ach interrogatory … separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3).

In response to a request for admission, the responding party can "admit" the answer or, "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed.R.Civ.P. 36(a)(4). If a party does not answer the Request for Admission "within 30 days after being served," the "matter is admitted." *Id*. 36(a)(3). If a party is "unable to admit or deny a request" the responding party "must provide a detailed explanation describing their inability to admit or deny the request." ***Jensen v. USTA***, No. 20-JWL-TJJ, 2022 WL 218632, at *3 (D. Kan. Jan. 25, 2022). The purpose of Requests for Admission are twofold: "(1) to reduce trial time by facilitating proof of disputed issues, and (2) to narrow issues where they can be resolved." *Id*. (citation omitted). "The purpose of a request for admission generally is not to discover additional information concerning the subject of the request, but to force the opposing party to

formally admit the truth of certain facts, thus allowing the requesting party to avoid potential problems of proof." ***Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.***, No. 94-2395-GTV, 1995 WL 625744, at *1 (D. Kan. Oct. 5, 1995) (citation omitted).

Defendant complains that more than 400 Plaintiffs "offend these principles by punting on Requests for Admission and Interrogatories with nonresponsive assertions of 'gathering information' (or similar phrases like 'locating records'). (Doc. 121, at 15.) As an example, Defendant points to its Request for Admission No. 1, which asks if Plaintiffs submitted warranty claims to Textron Aviation. Many Plaintiffs responded by indicating they were "gathering information and/or documents responsive to this request and will supplement as soon as feasible." (*See, e.g.*, Doc. 121-1, at 256.) Defendants also point to its Interrogatory No. 6, which asks how often Plaintiffs have flown their aircraft since the lawsuit was initiated. Defendants assert that "hundreds" of Plaintiffs answered this Interrogatory the same way – that they were "gathering information and will provide once located."[2] (*See, e.g.*, Doc. 121-1, at 250.) Defendant argues that "Plaintiffs cannot simply grant themselves an indefinite extension to 'gather information.'" (Doc. 121, at 15.) The Court agrees – particularly given the passage of almost **nine months** since these discovery requests

---

[2] Defendant has submitted a prepared appendix listing Plaintiffs who have answered Interrogatories or Requests for Admission with "gathering information" or substantively identical phrases. (*See* Doc. 121-1, Appendix, at 263-77.)

were initially served.

Plaintiffs respond that Defendant has improperly "tried to lump the majority of Plaintiffs into a category of deficient responders and fails to even identify the responses it claims to be deficient," as Defendant cited to only one allegedly deficient response. (Doc. 155, at 10.)  Plaintiffs continue that it is "ludicrous" that Defendant "provided a list of all Plaintiffs whose responses merely contain the phrase 'gathering information' as a basis to deem admitted every single one of these Plaintiffs' RFA." (*Id*.)

Pursuant to D. Kan. Rule 37.1(b), "[d]iscovery-related motions must be accompanied by copies of the … the portions of the interrogatories, requests, or responses in dispute."  In this instance, however, the Court finds the approach taken by Defendant to be both efficient and common-sensical as it would be impractical for the Court to review responses to the 442 separate discovery requests contained in Defendant's appendix.  This is particularly true in a situation such as this wherein Plaintiffs do not dispute the validity of the list of discovery responses compiled by Defendant.  (*See* Doc. 155, at 10-11.)

Plaintiffs continue that the "gathering information" phrase was "merely meant to afford Plaintiffs the opportunity to supplement their response if more information was gathered, for example, information detailing the cracking on their aircraft." (*Id*., at 11.)  The Court is not persuaded by this argument.  Plaintiffs have a duty to supplement their discovery responses if and when new information becomes

available.  They do not need to qualify their discovery responses to reserve the right to do so.  *See **Lonquist Field Serv., LLC v. Sorby***, 21-1035-KHV-KGG, 2021 WL 4967041, at *5 (D. Kan. Oct. 26, 2021) (holding that "Plaintiff has both a duty provide all responsive information available when answering a discovery request as well as a continuing duty to supplement their interrogatory answers as information becomes available.") (citations omitted).

Plaintiffs continue that they "have agreed to provide the information; they are continuing to supplement their responses."  (Doc. 155, at 11.)  While this may be, we are past the time for Plaintiffs to admit or deny the Requests for Admission and respond, without qualification, to the Interrogatories listed in Doc. 121-1, Appendix, at 263-77.  Thus, the Court r**ecommends to the District Court** that the claims of any Plaintiffs who have made open-ended "gathering information" responses to Defendant's discovery requests be **DISMISSED**.

## V.     Failure to Respond to Requests for Production.

Defendant next complains that, as of the filing of the present motion, 74 Plaintiffs have produced **<u>no</u>** documents in response to Defendants Requests for Production while an additional 41 have produced nothing other than a publicly available printout from the FAA website.  (Doc. 121, at 16.)  Defendant argues that "[f]ailing to produce documents violates the Federal Rules."  (*Id*.)

According to Defendant, "[i]t is clear that for these 115 Plaintiffs, their 'enthusiasm for litigation' has 'flag[ged]' and they 'no longer' wish to 'meaningfully

engage[] in discovery.'"  (Doc. 121, at 16 (quoting ***Williamson v. Leavenworth***

***Cnty.***, No. 21-2558-DDC-RES, 2022 WL 17829967, at *1 (D. Kan. Dec. 21, 2022)).

*Id*.  Defendant states that it has "invested enormous sums trying to track down

information from these Plaintiffs – all to no avail."  Defendant asks that these

Plaintiffs be dismissed from the case for their discovery failures.

Plaintiffs respond that they have "collectively produced 25GB consisting of

13,748 documents and 21,307 pages," while acknowledging that some Plaintiffs have

not yet produced responsive documents.  (Doc. 155, at 11.)  Plaintiffs' "collective"

production is thoroughly irrelevant to the Court's analysis.  As noted throughout this

litigation, this is <u>not</u> a class action.

Plaintiffs also state that "[t]here are also instances where Plaintiffs' counsel

has not received documents from their clients, despite repeated requests and

reminders of their discovery obligations."  (*Id*.)  This, if anything, merely proves

Defendant's argument – that certain non-involved Plaintiffs should be removed from

this case.  Even so, Plaintiff's propose that counsel have 60 days to contact the

"admittedly dilatory" Plaintiffs "to afford them a final chance to have either 1)

confirm that they have no responsive documents to produce or 2) acknowledge that

they will be subject to removal from the case if they fail to produce the responsive

documents in their possession."  (*Id*.)

Defendant replies that, given these admissions, by Plaintiff, "there is no basis

in equity or common sense for keeping these Plaintiffs' claims on life-support."

(Doc. 158, at 5.)  The Court agrees.  The Court sees no equitable justification for allowing Plaintiffs' counsel yet another attempt to beg involvement from Plaintiffs that are clearly disinterested or unmotivated to actively participate in this litigation. On March 6 – over five months ago – Plaintiffs were given the again-requested "final chance" to respond to discovery by May 12 – three months ago.  Plaintiffs have failed to do so.

As such, the undersigned Magistrate Judge **recommends** to the District Court that the Plaintiffs listed in Defendant's Exhibit 25 (Doc. 121-1, at 279-82) be **DISMISSED** from this case for failure to participate in discovery.  *See **Yomi v. Becerra***, No. 21-2224, 2022 WL 17959327, *2 (D. Kan. Dec. 27, 2022) (holding that "Plaintiff's repeated refusal to participate in the discovery process merits a dispositive sanction under the Federal Rules of Civil Procedure.").

## VI.    Failure to Produce Requested Communications.

Plaintiffs claim fraud and deception on the part of Defendant, which clearly find their bases in communication by Defendants.  (*See generally* Fourth Amended Complaint, Doc. 168.)  Throughout the operative Complaint, Plaintiffs allege "misrepresentations," "communications," and "false assurances" By Defendant.  (*See id.*)  More specifically, the Fourth Amended Complaint includes allegations such as the following:

> 1) "The allegations contained in this Complaint are based on continuous occurrences and documented communications between the Defendants and Plaintiffs."

(Doc. 168, at ¶3.)

2)  "Defendants have continued to communicate these misrepresentations and concealments as late as February of 2019 and even later to Plaintiffs and members of Plaintiffs' group."  (*Id.*, at ¶740.)

3)  Alleging that Defendants "communications characterized the cracking defect as 'cosmetic' and the repairs as 'optional,' and at no time did Defendants inform Plaintiffs that there was a threat to safety and/or airworthiness posed by the cracking defects." (*Id.*, at ¶770(b).)

4) An extensive listing of Defendant's "false statements" relied upon by Plaintiffs.  (*Id.*, at ¶780, at 209-204.)

(*See also id.*, at ¶¶ 9, 711, 726, 728, 729, 731, 738, 754, 770, 800.)  Further, Plaintiffs' opposition to Defendant's Motion to Dismiss maintained that Defendant "made express representations to aircraft owners generally and to specific aircraft owners that it knew of the defect, told Plaintiffs the defect was merely cosmetic, and promised to remedy the defect."  (Doc. 82, at 14.)

That stated, as of the filing of Defendant's motion, "only 28 Plaintiffs have produced any emails or other communications" responsive to Defendant's discovery requests.  (Doc. 121, at 16; referencing Doc. 121-1, at 284.)  This has occurred despite Defendant clearly requesting production of such communications – Defendant's RFP No. 7 seeks "[c]ommunications sent, delivered, or exchanged between You and Textron Aviation," RFP No. 8 seeks "[c]ommunications relating to the purchase" or "sale" of the aircraft, and RFP No. 10 asks for "[c]ommunications

regarding [the] warranty or warranties" referenced in the pleadings.  (Doc. 121-1, at

121-22.)  Further, as of the filing of the motion, Plaintiffs have not "followed up with

individual responses to the Requests for Production."  (Doc. 121, at n.5.)  According

to Defendant, this equates to Plaintiffs alleging "'You have defrauded us, but we will

not tell you how,'" making it impossible for Defendant to defend itself against these

claims.  (*Id*., at 17.)  The Court agrees.

Defendant argues that "Plaintiffs' attempt to globally respond to Requests for

Production directed to Plaintiffs individually is not a proper response and therefore

constitutes a waiver of all objections."  (Doc. 121, at 17 (citing ***First Sav. Bank,***

***F.S.B. v. First Bank Sys., Inc.***, 902 F. Supp. 1356, 1360 (D. Kan. 1995) (holding

that "[w]hen a producing party fails to make a timely and proper objection, a court

may find that the party has waived any objections…")  The Court again agrees.

Plaintiffs' responses have not been timely and any objections to these

document requests are therefore waived by the nonresponsive Plaintiffs.  Defendants

also point out that Plaintiffs did not object to Requests for Production No. 7, 8, or 10,

or numerous others seeking communications. (Doc. 121-1, at 121-22.)  Defendant

argues that "Plaintiffs who have failed to produce communications – a without

arguing that requests for such communications are improper – should be dismissed."

(Doc. 121, at 17.)

Plaintiffs respond that they "have agreed to produce communications where

they exist."  (Doc. 155, at 12.)  Plaintiffs continue, however, that "[w]hether each

individual Plaintiff has communication in their possession, custody and control is a different story."  (*Id*.)  That story, however, Plaintiffs' alone to tell.  Unfortunately, they have blatantly refused or failed to do so.

Plaintiffs have unequivocally injected Defendant's communications into the very heart of this litigation.  Having failed to produce evidence to support these claims, the Court **recommends** to the District Court that Plaintiff's claims be **DISMISSED**.  *See Yomi*, 2022 WL 17959327, at *2 (holding that "Plaintiff's repeated refusal to participate in the discovery process merits a dispositive sanction under the Federal Rules of Civil Procedure.").

## VII.   "Cut & Paste" Responses to Interrogatories Nos. 2 and 4.

Defendant asserts that it "served Interrogatories on each and every Plaintiff individually" in order to " efficiently learn about each of the hundreds of Plaintiffs in this case." (Doc. 121, at 19.)  It is undisputed, however, that Plaintiffs initially responded with a single, inappropriate global response to interrogatories that attempted to answer on behalf of all Plaintiffs.  Defendant contends that after demanding that Plaintiffs respond individually, Plaintiffs "attempted to skirt these duties again by producing individual interrogatory responses that (a) are clearly lawyer-drafted and copied-and-pasted across all Plaintiffs, and (b) make no attempt to fully answer the questions."  (*Id*.)

Defendant's Interrogatory No. 2 asks Plaintiffs to "[d]escribe with particularity any 'cracking' to Your Aircraft, including the date You first noticed any such

'cracking,' steps You took in response to any such 'cracking,' and the date(s) you took those steps."  (Doc. 121-1, at 184.)  According to Defendant, each of the individual Plaintiffs to answer the interrogatory "copy-pasted an identical paragraph sometimes adding a short extra blurb toward the end":

> The cracking appears around the windows, pilot side and co-pilot side both cockpit and passenger, and/or around the windscreen. Cracking appears to be parallel to the shape of the window and windscreen with some departures from those shapes at the corners of the cracking, that move out perpendicular to the shape of the window/windscreen. Cracks appeared to go through the paint and into the composite material and varied from small surface cracks to deeper cracks that appear to travel through the structure.
>
> The cracking on Plaintiffs' aircraft spread to and cracked the actual window in 2021 requiring repair.
>
> Plaintiffs also refer requesting party to their production of documents in response to Request for Production #3 which seeks photographs depicting the cracking.
>
> Plaintiffs reserve the right to amend and/or supplement these responses.

(Doc. 121, at 20, referring to Doc. 121-1, at 184-85.)

Defendant's Interrogatory No. 4 asks Plaintiffs to identify and describe

> every alleged misstatement or misrepresentation made by Textron Aviation to You that you rely upon for any claim alleged in your Complaint regarding the Aircraft, including the time of each alleged misstatement or misrepresentation, the individual or individuals who made the misstatement or misrepresentation, and your reaction to the misstatement or misrepresentation, consistent with the particularity requirements of Federal Rule of Civil Procedure 9.

23

(Doc. 121-1, at 185.)  Defendant asserts that nearly all of the Plaintiffs who

responded submitted a virtually "verbatim answer that – but for occasional trivial

differences in one or two words" reads as follows:

> Objection. Plaintiffs objects to the extent that defendant
> asserts a response must be in accordance with FRCP 9.
> Subject to and without waiving said objections, Plaintiff
> respond [sic] to this interrogatory. Plaintiffs reserve the
> right to amend and/or supplement these responses.
>
> Cessna has put out to the community including through
> CAAC that these cracks are only cosmetic and that they
> would repair them. At this time, no repair has been offered,
> and certain aircraft have had cracks travel through the
> actual windows.

(Doc. 120, at 19-20, referencing Doc. 121-1, at 185.)

Defendants refer the Court to an interrogatory response produced by Plaintiffs

that "retained a highlighted menu of multiple-choice options that Plaintiffs' counsel

appears to have inserted to guide Plaintiffs to preferred answers."  (*Id.*, at 20,

referencing Doc. 121-1, at 296-97.)  The response to Defendant's Interrogatory No. 2

from Plaintiffs Quality Protection, Inc. and Wayne Lewis that was served on

Defendant states the following:

> RESPONSE: The cracking appears around the windows,
> pilot side and co-pilot side both cockpit and passenger,
> and/or around the windscreen. Cracking appears to be
> parallel to the shape of the window and windscreen with
> some departures from those shapes at the corners of the
> cracking, that move out perpendicular to the shape of the
> window/windscreen.  Cracks appear to go through the paint
> and into the composite material and vary from small
> surface cracks to deeper cracks that appear to travel

through the structure.

Plaintiff(s) also refer requesting party to their production of documents in response to Request for Production #3 which seeks photographs depicting the cracking.

**Optional AND**
**In addition, prior to the repair attempt in _____, the cracks departed the outer perimeter of the rear pilot side window and entered the window pane [sic], curved through the pane in a large "horseshoe" shape and then re-entered the composite.**

**Optional AND/OR**
**The cracking to Plaintiffs' aircraft was present at the time of purchase, and the presence of the cracks was discussed with the [former owner and/or the dealer brokering the Purchase / Sale of the aircraft.**

**Optional AND**
**Optional: Following the discovery of cracks on the aircraft, I spoke with _____ at _____ and discussed the status of the cracks and the status of the repair procedures.**

**Optional AND**
**I also reviewed the posts made on the CAAC website that discuss Cessna's progress on developing and determining the procedures for the repair.**

Plaintiffs reserve the right to amend and/or supplement these responses.

(Doc. 121-1, at 296-97 (emphasis in original discovery response from Plaintiff).)

Plaintiffs' counsel admits that the highlighted language is a cut-&-pasted

"template" response provided by Plaintiffs' counsel to Plaintiffs instructing and

guiding them on how to respond. Plaintiffs devote the majority of their discussion of

25

this issue to chastising defense counsel for attempting to "exploit Plaintiffs [sic] error and violate" the Professional Conduct Rules of the American Bar Association.  (Doc. 155, at 13.)  For the purposes of this motion, however, the Court is concerned only with Plaintiffs' discovery responses – particularly given the litany of discovery deficiencies and improprieties discussed throughout this Order.

Plaintiffs only half-heartedly attempt to counter Defendant's arguments regarding the appropriateness of their canned interrogatory responses by "steadfastly" submitting they have done nothing wrong and contending that Defendant's complaints are "grossly misstated."  (*Id*., at 13-14.)  Plaintiffs completely ignore Defendant's valid concern that the options provided by Plaintiffs' counsel do not include an option to the effect of "my aircraft does not exhibit cracking."  (Doc. 121, at 22.)  Defendant argues that the "copy-and-paste response confirms that Plaintiffs are not taking seriously their duty to respond to discovery as *individuals*."  (Doc. 121, at 18.)  The Court agrees.

Having failed to provide interrogatory responses from the individual Plaintiffs, the Court **recommends** to the District Court that Plaintiff's claims be **DISMISSED**.  *See Yomi*, 2022 WL 17959327, at *2 (holding that "Plaintiff's repeated refusal to participate in the discovery process merits a dispositive sanction under the Federal Rules of Civil Procedure.").

## VIII.  Remedy.

Defendant argues that "[b]y any reasonable measure, Plaintiffs' failures to

comply with discovery duties – seven weeks after this Court's drop-dead date for

compliance – are staggering." (Doc. 121, at 22.) Defendant summarizes Plaintiffs'

discovery abuses, which have been discussed in detail throughout this Order, as

follows:

> (1) just 10% of Plaintiffs verified Interrogatory responses;
> (2) all 700-plus Plaintiffs leveled seven conditional
> objections and 42 boilerplate objections; (3) Plaintiffs
> answered hundreds of Interrogatories and Requests for
> Admission with "gathering information"; (4) around 100
> Plaintiffs produced nothing; (5) over 700 Plaintiffs
> produced no communications; and (6) Plaintiffs subverted
> the discovery process by providing hundreds of copied-
> and-pasted nonresponsive answers to Interrogatories.

(*Id*.) In this context, Defendant requests the following relief:

- Plaintiffs who have not verified their responses to Textron
  Aviation's Interrogatories are dismissed (all Plaintiffs not
  listed in Ex. 16). Alternatively, Textron Aviation requests
  that the Court permit Plaintiffs seven days to verify
  Interrogatory responses or face dismissal.

- Plaintiffs' conditional objections to Interrogatory Nos. 4, 5,
  and 6, and to Requests for Admission Nos. 1, 2, 3, and 4 are
  overruled and Plaintiffs must submit new responses within
  seven days or else face dismissal.

- Plaintiffs' 42 general objections are overruled.

- Plaintiffs who have answered the Requests for Admission
  with "gathering information" or anything similar admit
  those items and Plaintiffs who answered the Interrogatories
  the same way must resubmit complaint responses in seven
  days or face dismissal (*see* Ex. 24).[3]

---

[3] (Doc. 121-1, at 264-77.)

- Plaintiffs who have not produced documents in response to Textron Aviation's Requests for Production (listed in Ex. 25)[4] are dismissed. Alternatively, Textron Aviation requests that the Court permit Plaintiffs seven days to complete their production or face dismissal.

- Plaintiffs who have not produced any communications (listed in Ex. 26)[5] must complete their production of communications within seven days or else face dismissal.

- Plaintiffs' copied-and-pasted answers to Interrogatory Nos. 2 and 4 are inadequate. Plaintiffs must submit new, compliant responses within seven days or face dismissal.

- Textron Aviation is awarded its fees and costs for making this motion, subject to a request filed within 30 days of the Court's order. See Fed. R. Civ. P. 37(a)(5).

(*Id.*, at 24.)

The Federal Rules of Civil Procedure permit a court to dismiss an action in whole or in part "[i]f a party ... fails to obey an order to provide or permit discovery." Fed.R.Civ.P. 37(b)(2)(A). *See also **Yomi**, 2022 WL 17959327, at 2 (holding that "Plaintiff's repeated refusal to participate in the discovery process merits a dispositive sanction under the Federal Rules of Civil Procedure."). "Determination of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make." ***Ehrenhaus***, 965 F.2d at 920.

It is well-established, however, that dismissal is an "extreme sanction appropriate only in cases of willful misconduct." (*Id.* (citations omitted).)  Often, a

---

[4] (Doc. 121-1, at 279-82.)
[5] (Doc. 121-1, at 284.)

lesser sanction may be sufficient to deter the offending misconduct.  (*Id*.)  "Because

dismissal with prejudice 'defeats altogether a litigant's right to access to the courts,'

it should be used as 'a weapon of last, rather than first, resort.'"  *Id.* (citation

omitted).

The chosen sanction must be both "just" and "related to the particular 'claim'

which was at issue in the order to provide discovery."  ***Insurance Corp. of Ireland v.***

***Compagnie des Bauxites de Guinee***, 456 U.S. 694, 707, 102 S.Ct. 2099, 2106, 72

L.Ed.2d 492 (1982).  In determining the appropriate sanction, a court must consider

the following factors:

> '(1) the degree of actual prejudice to the defendant; (2) the
> amount of interference with the judicial process; ... (3) the
> culpability of the litigant" …  ; (4) whether the court
> warned the party in advance that dismissal of the action
> would be a likely sanction for noncompliance … ; and (5)
> the efficacy of lesser sanctions.

*Ehrenhaus*, 965 F.2d, at 921 (citations omitted).   "Only when the aggravating

factors outweigh the judicial system's strong predisposition to resolve cases on their

merits is dismissal an appropriate sanction."  ***Meade v. Grubbs***, 841 F.2d 1512, n.7

(10th Cir.1988) (citations omitted).  These factors are not to be considered a "rigid

test," but instead "represent criteria for the district court to consider prior to imposing

dismissal as a sanction."  ***Ehrenhaus***, 965 F.2d, at 921.

Plaintiffs argue that dismissal is not appropriate under the circumstances

presented because "there is no evidence of bad faith on the part of any individual

plaintiff or collectively." (Doc. 155, at 15.)  The Court clearly does not agree. Whether the fault of counsel for being unable to manage 700+ Plaintiffs or the fault of a large number of these Plaintiffs being clearly disinterested in proceeding with this litigation, the litany of discovery failures discussed herein clearly constitutes either bad faith or a lack of faith entirely.

Plaintiffs contend that they "continue to work tirelessly to provide responsive documents, answers, and admissions." (*Id.*)  These issues have been evident since November of last year.  If Plaintiffs continue to "work tirelessly," the Court surmises they are nearing the point of exhaustion.  Regardless, they have exhausted the Court's patience.

Plaintiffs also argue that the prejudice to Defendant caused by these discovery delays is "minimal" considering that Defendant "still has not answered Plaintiffs' Complaint, depositions have not been taken, and [Defendant] continues to issue rolling document production itself." (*Id.*)  The Court finds Plaintiffs' argument to be, at best, insincere.  Plaintiffs' counsel cannot discount the time, effort, and expense expended by Defendant's attempts to wrangle valid discovery responses from Plaintiffs.  The Court does not discount the time, effort, expense and frustrations incurred through Plaintiffs' counsel's efforts to compile the discovery responses. That stated, as the District Court so eloquently expressed, Plaintiffs "chose to bring this case as 748 individual claims" and they "must deal with the consequences of that choice." (Doc. 105, at 26.)

Plaintiffs lastly argue that "there are remedies short of the dismissal of individual plaintiffs' claims that can be entered to accomplish the goal of discovery." (Doc. 155, at 15.)  Plaintiffs suggest the following of Defendant's requested relief should be denied outright:  1) Defendant's request to overrule the boilerplate objections (Section III, *supra*); 2) Defendants' request to dismiss the Plaintiffs who have failed to produce communications (Section VI, *supra*); and 3) Defendant's objections to the "cut-&-paste" nature of Plaintiffs' responses to Interrogatories Nos. 2 and 4.  (Section VII, *supra*.)

Plaintiffs then ask for "60 days to remedy the alleged discovery deficiencies before considering any discovery sanctions" regarding the following discovery deficiencies:  1) verified Interrogatory responses from each individual Plaintiff (Section I, *supra*); 2) rectifying the conditional objections to Interrogatories 4, 5, 6 and Request for Admission 1, 2, 3, and 4 (Section II, *supra*); 3) rectifying the "gathering information" responses to Interrogatories and Requests for Admission (Section IV, *supra*); and 4) compiling responses to Defendant's Requests for Production from the approximately 100 Plaintiffs who have failed to do so.  (Section V, *supra*.)  Plaintiffs contend that adopting such a remedy will

> allow certain Plaintiffs to supplement responses which may
> have one or two items missing, and for those who remain in
> the case but have wholly deficient responses (such as
> having produced no documents), it will allow counsel to
> give these Plaintiffs a final chance to confirm that they
> have no information or will be subject to dismissal if they
> fail to provide information in their control.  Plaintiffs lastly

> urge the Court to consider a discovery conference to
> address the issues raised in Textron's Motion as well as
> ongoing discovery issues in this case.

(*Id*.)  Plaintiffs seemingly ignore the fact that **five months ago** the Court gave

Plaintiffs a deadline by which all this was to have accomplished – and that deadline

expired **three months ago**.

For these reasons, the Court **GRANTS** Defendant's Motion to Compel (Doc.

120) as discussed herein.  Further, the Court **recommends** that the District Court

**DISMISS** Plaintiffs' claims as outlined herein:

- All Plaintiffs who have failed to provide verified responses to Defendant's interrogatories (as discussed in Section I, *supra*) **as of the date of this Order**.  Defendant is instructed to update/revise its Appendix (Exh. 16, Doc. 121-1, at 178-80) to provide the Court with a list of all Plaintiffs who have **not** verified their interrogatory responses.  This updated/revised list shall be filed **on or before August 28, 2024**.

- All Plaintiffs who have continued to provide evasive, open-ended "gathering information" discovery responses (as discussed in Section IV, *supra*) **as of the date of this Order**.  Defendant is instructed to update its Appendix (Exh. 24, Doc. 121-1, at 263-77) to remove Plaintiffs, if any, who have supplemented their discovery responses to remove such improper open-ended responses from the filing of Defendant's motion until the date of this Order.  This updated list shall be filed **on or before August 28, 2024**.

- All Plaintiffs who have failed to produce documents in response to Defendant's Requests for Production (as discussed in Section V, *supra*) **as of the date of**

**this Order**.  Defendant is instructed to update its Appendix (Exh. 25, Doc. 121-1, at 279-82) to remove Plaintiffs, <u>if any</u>, who provided responsive documents from the filing of Defendant's motion to the date of this Order.  This updated list shall be filed **on or before August 28, 2024**.

- All Plaintiffs who have failed to produce the requested communications (as discussed in Section VI, *supra*) **as of the date of this Order**.  Defendant is instructed to update its Appendix (Exh. 26, Doc. 121-1, at 284) to remove Plaintiffs, <u>if any</u>, who have provided responsive documents from the filing of Defendant's motion until the date of this Order.  This updated list shall be filed **on or before August 28, 2024**.

- All Plaintiffs who provided "cut & paste" responses to Interrogatories Nos. 2 and 4 (as discussed in Section VII, *supra*) **as of the date of this Order**.  Defendant is instructed to provide the Court with a list of all Plaintiffs who have provided the offending "cut & paste" responses to Interrogatories Nos. 2 and 4.  This list shall be filed **on or before August 28, 2024**.

Defendant shall then compile <u>one, universal list</u> enumerating all Plaintiffs who are noncompliant with the sections of this order listed above, indicating which section(s) with which each listed Plaintiff is noncompliant.  This list shall be filed **on or before August 28, 2024**.

The remaining Plaintiffs shall provide supplemental responses removing **all** conditional and boilerplate objections (discussed in Sections II and III, *supra*) **within thirty days of the date of this Order**.

**IT IS ORDERED THAT** Defendant's Motion (Doc. 120) is **GRANTED** as set forth above.

**IT IS RECOMMENDED**, however, to the District Court that Plaintiffs' Complaint (Doc. 168) be **DISMISSED** as to the offending Plaintiffs as outlined herein.

**IT IS THEREFORE ORDERED** that pursuant to 28 U.S.C. §636(b)(1), Fed.R.Civ.P. 72, and D.Kan. Rule 72.1.4, Plaintiffs shall have fourteen (14) days after service of a copy of these proposed findings and recommendations to serve and file with the U.S. District Judge assigned to the case, any written objections to the findings of fact, conclusions of law, or recommendations of the undersigned Magistrate Judge.  Plaintiff's failure to file such written, specific objections within the 14-day period will bar appellate review of the proposed findings of fact, conclusions of law, and the recommended disposition.

**IT IS SO ORDERED AND RECOMMENDED**.

Dated at Wichita, Kansas, on this 14th day of August, 2023.

/S/ KENNETH G. GALE
KENNETH G. GALE
United States Magistrate Judge