IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ZONE FIVE, LLC, et al.,

                **Plaintiffs,**

    **v.**

                 **Case No. 20-1059-DDC-RES**

TEXTRON AVIATION, INC.,

                **Defendant.**

## MEMORANDUM AND ORDER

The Federal Rules of Civil Procedure allow a court to dismiss parties' claims when the parties fail to participate meaningfully in discovery. But our Circuit has urged courts to use this sanction with utmost caution—reserving it for cases involving willful misconduct. In August of this year, the United States Magistrate Judge then assigned to this action issued a Report and Recommendation (Doc. 179).[1] He recommended that this court dismiss most plaintiffs for failing to cooperate in discovery. Plaintiffs timely objected. To be sure, this mass product liability action of 600+ plaintiffs has presented logistical nightmares for both the parties and the court. But the court, reviewing these recommended dismissals de novo, concludes that the Magistrate Judge failed to use the utmost caution when he recommended dismissal. The court thus sustains plaintiffs' objection to the Magistrate Judge's recommendation that the court dismiss parties who have committed certain discovery violations. To avoid any delays, the court imposes its own remedies for discovery abuses, detailed below.

The Magistrate Judge's Report and Recommendation also recommended that the court overrule some of plaintiffs' objections to defendant's discovery requests. Plaintiffs timely

---

[1] On December 7, 2023, the court reassigned the matter to U.S. Magistrate Judge Rachel E. Schwartz.

objected to these conclusions, too.  The court reviews these rulings about discovery under a clearly erroneous or contrary to law standard and, finding neither, overrules plaintiffs' objections to those matters.

The court explains these decisions, below, beginning with the relevant background.

## I.      Background

The court briefly summarizes the facts of the case to frame the current discovery disputes.  Hundreds of plaintiffs purchased the Cessna TTx, an aircraft designed and manufactured by defendant, Textron Aviation.  Doc. 168 at 45–46 (Fourth Am. Compl. ¶ 1). Plaintiffs allege that their aircraft had a latent defect that caused the aircraft's windows, windscreen, and aircraft skin to crack.  *Id.* at 46–47 (Fourth Am. Compl. ¶ 2).  Plaintiffs allege that the cracks can cause serious safety issues.  *Id.*  Plaintiffs also allege that defendant promised repeatedly to correct and repair the defect, but never did.  *Id.*

This isn't a class action.  Instead, each one of the 600+ plaintiffs bring individual claims, seeking individualized damages.  To put it mildly, this case's structure has brought some difficulty with it.  These difficulties have plagued the parties and the court.

After transfer from another judicial district, this case has pended in our court for more than four years.  Plaintiffs filed this lawsuit in the District of Rhode Island on July 22, 2019. Doc. 1.  The District of Rhode Island transferred the case to this court on March 2, 2020.  Doc. 25.  On June 19, 2020, the parties filed a joint motion to stay the case for 120 days.  Doc. 41. The Magistrate Judge granted the motion.  Doc. 42.  The parties submitted joint status updates over the next several months and jointly requested more stays of the case through late 2021.  *See* Doc. 43; Doc. 44; Doc. 45; Doc. 47; Doc. 50.  The Magistrate Judge began having conferences with the parties in early 2022.  *See* Doc. 52; Doc. 53; Doc. 55.  And the Magistrate Judge entered the case's first Scheduling Order on August 1, 2022.  Doc. 57.  This Scheduling Order

envisioned "highly focused discovery from defendant regarding [certain representative plaintiffs'] individual claims in order to streamline a global resolution, if possible." *Id.* at 5. The Scheduling Order provided that the parties would try to agree (by October 21, 2022) on 20 plaintiffs for priority discovery. *Id.* It also mentioned that defendant anticipated serving limited interrogatories on each plaintiff. *Id.* at 7–8. But trouble began emerging in late 2022.

### *Discovery Requests*

October 2022 came and passed, but the parties failed to submit a joint report about the 20 plaintiffs for priority discovery. Doc. 60. The Magistrate Judge strived to jump start proceedings, instructing the parties to submit a joint report by November 8, 2022. *Id.* Plaintiffs amended their Complaint on November 9, 2022. Doc. 63. Then, in late November 2022, defendant began litigating this case in earnest.

Defendant filed its Rule 12 motions on November 23, 2022—more than three years after plaintiffs had filed their original Complaint. Doc. 68; Doc. 69. And, on November 23, 2022, defendant served plaintiffs with the discovery at issue here: Defendant's First Set of Interrogatories, Defendant's First Set of Requests for Admission, and Defendant's First Set of Requests for Production. Doc. 71. Plaintiffs asked for a 60-day extension to respond to these discovery requests, and defendant consented. Doc. 121-1 at 41–42. Plaintiffs served their initial responses on February 20, 2023. *Id.* at 65; *Id.* at 94; *Id.* at 123.

Again, remember that all 600+ plaintiffs bring *individual* claims; they don't proceed as a class and don't aspire to do so. Plaintiffs nonetheless served a single, joint initial response to the interrogatories, RFAs, and RFPs. *See id.* at 44–68; *Id.* at 70–97; *Id.* at 99–126. Predictably, defendant took issue with this approach. Defendant also took issue with the substance of plaintiffs' objections and responses, as discussed at length, below. Defense counsel e-mailed plaintiffs' counsel the next day, informing counsel that defendant viewed plaintiffs' discovery

responses as "deficient in numerous respects." *Id.* at 128.  Defense counsel suggested that plaintiffs were delaying the case because plaintiffs had failed to provide substantive responses, calling plaintiffs' conduct "dilatory and inappropriate." *Id.*  Defense counsel sought to meet and confer the next day. *Id.*

### February 22, 2023, Meet and Confer

The parties had their first meet and confer about the discovery issues on February 22, 2023. *Id.* at 131.  Both sides wrote letters memorializing their meet and confer.  Defendant's letter reported that plaintiffs had promised to produce documents and complete discovery responses for each plaintiff by March 8, 2023. *Id.* at 131–32.  Defendant's letter also discussed its specific concerns about individual interrogatory, RFA, and RFP responses and objections. *Id.* at 131–35.

Plaintiffs' letter similarly renewed the parties' arguments about individual interrogatories, RFAs, and RFPs. *Id.* at 137–43.  Plaintiffs' letter also promised "full and complete responses to RFPs . . . by next Wednesday[.]" *Id.* at 143.  And plaintiffs' counsel "indicated that he believed that there would be no reason . . . we shouldn't be able to produce the current documents received from our clients responsive to the RFPs within two weeks." *Id.*  Note that this response doesn't mention defendant's interrogatories or RFAs.  In defendant's view, plaintiffs' letter unjustifiably walked back from plaintiffs' commitment to produce responses to everything— documents, RFAs, and interrogatories—by March 8.

On February 24, 2023, defendant sought a final yes or no answer from plaintiffs.  Defense counsel sent plaintiffs' counsel an email asking:  "Will each of the 748 Plaintiffs individually serve complete and compliant responses to Defendant's requests for production, requests for admission, and interrogatories and produce all responsive documents on or before March 8, 2023?" *Id.* at 145 (emphases omitted).  Defendant asserted that plaintiffs had provided

the March 8 date during the meet and confer.  *Id.*  Naturally—notice a pattern emerging—plaintiffs disagreed.  Plaintiffs' counsel responded, "we respectfully disagree that we have withdrawn or modified any of our discussions from the meet and confer.  You agreed to accepting responses to Request[s] for Production by March 8th, and you never addressed the issues regarding RFA[s] and Interrogatories as it relates to timing."  *Id.* at 149.  Plaintiffs' counsel also suggested that "it seem[ed] as though the intention is less about attempting to work together, but rather an intention to simply file something with the Judge[.]"  *Id.*

Defense counsel responded that they "made it extremely clear on the [February 22 meet and confer] call that we needed to know when we'd receive all of the delinquent responses and documents, as set forth in our February 23 letter."  *Id.* at 159.  Defense counsel also wrote, "it seems you are still unable to commit to a firm date to serve compliant responses to the discovery that was due a week ago."  *Id.*

### February 28, 2023, Meet and Confer

The parties thus convened a second meet and confer, this one on February 28, 2023.  And, once again, accounts of the meet and confer differ.  And while the disagreement is a limited one, it's meaningful because the pattern grows even clearer.

Defense counsel recalled in his letter, "Plaintiffs' counsel confirmed that each Plaintiff will produce all documents responsive to Textron's requests for production[,] . . . and will produce complete and compliant responses to Textron's requests for admission . . . , and Interrogatories (including verifications), on or before March 8, 2023."  *Id.* at 171.  According to defense counsel's letter, plaintiffs' counsel asserted documents and verifications could arrive after March 8, "but that substantial completion of all discovery responses would occur by March 8, 2023."  *Id.*

Plaintiffs' counsel responded with a letter of their own.  It provides, "As Plaintiffs have repeatedly advised, and I stated again on the call in no uncertain terms, we are putting forth our best efforts to get Defendant responses to the individual discovery requests (Rogs, RFAs, and documents) by March 8, which is our best estimate[.]"  *Id.* at 174 (emphases omitted).  Plaintiffs' letter claimed that their counsel had said "best estimate" more than once during the meet and confer call.  *Id.*  And plaintiffs' letter took issue with defense counsel's use of the term "complete and compliant" discovery because plaintiffs, in their view, had valid objections to some of the discovery requests and a duty to supplement discovery.  *Id.* at 174–75.  In defendant's view, this letter represents plaintiffs' second effort to walk back their commitments.

### *The Court's Deadlines*

The Magistrate Judge held an informal conference with the parties on March 6, 2023. Doc. 96.  His Minute Order from the conference provides:

> Counsel have worked diligently to find ways to move this case forward, but disputes have arisen concerning both the scope and subject of discovery and the timing of Plaintiffs' responses to discovery.  The Court expressed opinions concerning substantive discovery issues and urged the parties to continue efforts to resolve those matters.  However, to facilitate a more formal resolution of disputes the Court Orders as follows.  Plaintiffs will provide complete formal responses to pending discovery by May 12, 2023.

*Id.*  After the May 12 deadline passed, defendant maintained "that Plaintiffs had come nowhere near complying with their discovery duties."  Doc. 121 at 10.  The Magistrate Judge held a status conference with the parties on June 2 and ordered them to file "any motions relating to outstanding discovery issues by June 30, 2023."  Doc. 106.

### *Defendant's Motion to Compel*

Defendant met the motion deadline, filing a "Motion to Compel Discovery and Dismiss for Failure to Make Discovery" on June 29, 2023.  Doc. 120.  Defendant's motion presents both general grievances and specific grievances with plaintiffs' discovery responses.  Its motion also

seeks specific remedies for each of plaintiffs' discovery delinquencies.  The court dissects this motion in the next two paragraphs.

*First*, start with the general grievances.  Defendant begins:  "It is now four years since Plaintiffs hailed Defendant Textron Aviation . . . into court, over seven months since Textron Aviation served discovery and began efforts to meet-and-confer, and 49 days since the Court-ordered due date for Plaintiffs' discovery came and went."  Doc. 121 at 5.  Defendant lamented that the "litigation cannot go on this way."  *Id.*  Defendant also argued that plaintiffs had made a common error by "assum[ing] that they can rely on class-wide allegations and discovery to prop up individual claimants, but they cannot."  *Id.*

*Second*, the identified specific complaints about plaintiffs' responses.  After all the meeting and conferring, defendant's discovery issues boiled down to these seven disputes:

1. **Conditional Objections:**  Plaintiffs made improper conditional objections to certain interrogatories and RFAs;

2. **Boilerplate Objections:**  Plaintiffs made improper boilerplate objections;

3. **Unverified Interrogatories:**  Hundreds of plaintiffs failed to verify their interrogatory responses;

4. **"Gathering Information" Responses:**  Plaintiffs punted on their answers to interrogatories and RFAs and granted themselves an extension of time by answering simply "gathering information";

5. **No Documents:**  Some plaintiffs produced no documents and others produced no documents except a publicly available printout from the FAA website;

6. **No Communications:**  Many plaintiffs produced no communications between them and defendant; and

7. **Copied and Pasted Answers:**  Plaintiffs copied and pasted identical, non-responsive answers to certain interrogatories.

*Id.* at 10–22.  The court examines each discovery issue, plaintiffs' response, and the Magistrate Judge's Report and Recommendation on each of these issues, below.

### *1.   Conditional Objections*

Defendant's Motion to Compel asked the court to overrule "conditional objections."

Doc. 121 at 12–14.  Defendant asserted that plaintiffs responded to certain interrogatories and

RFAs with improper conditional objections.  *Id.* at 13.  For example, Interrogatory No. 4 asks

plaintiffs to "[i]dentify and describe with particularity each and every alleged misstatement or

representation made by Textron Aviation to You that you rely up on for any claim alleged in

your Complaint . . . consistent with the particularity requirement of Federal Rule of Civil

Procedure 9."  *Id.* (citing Doc. 121-1 at 249).  To illustrate the conditional objection, defendant

provided the responses from plaintiffs SP Aviation, Inc. and Jeffrey W. Perdue.  *Id.* (citing Doc.

121-1 at 249).  According to defendant, they responded:

> Objection.  Plaintiffs object to the extent that defendant asserts a response must be
> in accordance with FRCP 9.  Subject to and without waiving said objections,
> Plaintiffs respond to this interrogatory.  Plaintiffs reserve the right to amend and/or
> supplement these responses.
>
> Cessna has put out to the community including through CAAC that these cracks
> are only cosmetic and that they would repair them.  At this time, no repair has been
> offered, and certain aircraft have had cracks travel through the actual windows.

*Id.* (citing Doc. 121-1 at 249).  It's the "[s]ubject to and without waiving said objections"

language that defendant challenged.  Defendant asserted that plaintiff Perdue made this same

improper objection to Interrogatories 4, 5, and 6.  *Id.* (citing Doc. 121-1 at 249–50).  Defendant

also provided examples of similar discovery defaults, noting that plaintiffs Lots-of-Knots

Aviation, LLC and John McCann answered RFAs 1, 2, 3, and 4 with similar conditional

objections.  *Id.* at 14 (citing Doc. 121-1 at 256–58).  Defendant argued that our court consistently

has overruled objections like these.  *Id.*  For a remedy, defendant asked the court to overrule the

conditional objections and order plaintiffs to "submit new responses within seven days or else

face dismissal."  *Id.*

Plaintiffs' response to this criticism pointed out that plaintiffs had answered these discovery requests despite the objections. Doc. 155 at 8. Plaintiffs argued that defendant "intentionally ignor[ed] the substantial and voluminous information Plaintiffs *have* provided." *Id.* at 10. Plaintiffs also took issue with defendant's tactic of providing individual examples as representative of all plaintiffs' discovery responses. *Id.* at 9.

The Magistrate Judge's Report and Recommendation overruled plaintiffs' conditional objections. Doc. 179 at 10–12. He explained that conditional responses "are invalid, unsustainable, and violate common sense." *Id.* at 11 (citation and internal quotation marks omitted). And the Magistrate Judge ordered plaintiffs to provide supplemental discovery responses that removed the offending conditional objections within 30 days. *Id.* at 12.

### 2. Boilerplate Objections

Defendant's Motion to Compel next asked the court to overrule plaintiffs' improper boilerplate objections, also known as general objections. Doc. 121 at 14. General objections are a party's attempt to object generally to the entirety of the discovery requests—*i.e.*, "Plaintiffs object to defendant['s] . . . Interrogatories which purport to request information that is subject to attorney-client privilege[.]" Doc. 121-1 at 247. Plaintiffs responded merely by asserting that defendant never had raised this issue during the meet and confer process. Doc. 155 at 10. Thus, plaintiffs argued, defendant had waived this argument. *Id.*

The Magistrate Judge overruled plaintiffs' boilerplate objections. Doc. 179 at 12–14. He explained that "this Court has repeatedly condemned the use of boilerplate of blanket objections." *Id.* at 13 (citation and internal quotation marks omitted). The Magistrate Judge ordered plaintiffs to serve supplemental answers without any boilerplate objections within 30 days. *Id.* at 13–14.

### 3.   Unverified Interrogatories

Defendant asserted that only 81 plaintiffs had verified their interrogatories.  Doc. 121 at

11.  Defendant cited Rule 33, which requires a party to sign its interrogatory answers.  *Id.*

Defendant asserted that plaintiffs' failure to verify "violates Rule 33 and frustrates the purpose of

discovery because unverified responses are not usable."  *Id.*  Defendant also asserted that

verification is critical because plaintiffs' discovery responses contained "peculiarities and

outright falsity."  *Id.*  As example, defendant cited one plaintiff's RFA response admitting that

he'd never submitted a warranty claim to defendant.  *Id.* (citing Doc. 121-1 at 192).  But, when

an interrogatory asked that particular plaintiff to identify each warranty claim he had filed, that

plaintiff responded:  "Plaintiffs are gathering information and/or documents responsive to this

request and will supplement as soon as feasible."  *Id.* at 12 (citing Doc. 121-1 at 184).  And

separately, defendant noted that it had received an interrogatory answer from someone who isn't

even a plaintiff in this action.  *Id.* (citing Doc. 121-1 at 200–06).

Now, the outright falsity:  Defendant's Motion to Compel asserted that defendant's

review of public records shows that 106 plaintiffs don't actually own the aircraft that they rely on

for their claims.  This condition contradicts the operative Complaint's allegations, which assert

that these plaintiffs own their aircraft.  *Id.* (first citing Doc. 168; then citing Doc. 63).  Defendant

also provided an example of a "non-owner" plaintiff who answered discovery as if he was the

registered owner.  *Id.* (citing Doc. 121-1 at 208).  Defendant prepared an appendix of all

plaintiffs and highlighted those plaintiffs who, according to defendant's review, no longer own

their aircraft.  *See* Doc. 121-1 at 216–44.

To tie these "peculiarities" and "falsities" to unverified interrogatories, defendant argued

that it "needs access to verified Interrogatory responses to defend itself against these Plaintiffs on

the oddities and inaccuracies of their pleadings and discovery."  Doc. 121 at 12.  Defendant also

expressed concern that plaintiffs' broad failure to verify interrogatory responses reveals that plaintiffs aren't even in touch with their counsel of record. *Id.* As remedy, defendant asked the court to dismiss each plaintiff who had failed to verify the interrogatories or, alternatively, give "Plaintiffs seven days to verify Interrogatory responses or face dismissal." *Id.* at 24.

Plaintiffs' response to defendant's assertion disputed defendant's math. Doc. 155 at 7. Plaintiffs asserted that 95 plaintiffs—not 81—had served individual verifications. *Id.* Plaintiffs' counsel also represented that they planned to serve an additional 45 verifications. *Id.* These discrepancies aside, plaintiffs asserted that they were continuing to work to secure verifications from their clients and asked the court for 60 more days before dismissing any plaintiffs. *Id.*

Plaintiffs' response also addressed the ownership issue and defendant's "falsity" accusations. Plaintiffs asserted that, when they filed the original Complaint, all plaintiffs owned their aircrafts. *Id.* Plaintiffs acknowledged that some of their owners had abandoned their claims over time, and they also asserted that plaintiffs' counsel have done their level best to keep current with these developments. *Id.* at 7–8. But plaintiffs also emphasized that "at no time have Plaintiffs conceded that, if an owner sells their aircraft they axiomatically lose their right to pursue any claims." *Id.* at 8 (emphasis omitted). This issue, plaintiffs argue, is one for summary judgment. *Id.*

The Magistrate Judge held that plaintiffs' failure to provide verified interrogatories warranted dismissal. Doc. 179 at 8–10. So, he "note[d] the harsh nature of dismissal as relief." *Id.* at 9. The Magistrate Judge also noted that no one had warned plaintiffs—at least not explicitly—that a failure to verify interrogatories could warrant dismissal. *Id.* at 10. And yet, the Magistrate Judge believed plaintiffs' failure to meet the court's unequivocal May 12, 2023,

deadline warranted dismissal of each plaintiff who had failed to verify the interrogatory answers.
*Id.*

### 4. *"Gathering Information" Responses*

Next, defendant's Motion to Compel faulted plaintiffs for answering interrogatories and
RFAs by asserting merely that they were "gathering information." Doc. 121 at 14–16.
Defendant argued that a "gathering information" response doesn't meet the applicable standards
for interrogatories and RFAs—it's an evasive, incomplete response. *Id.* at 14–15. Defendant
also argued that plaintiffs' improper response grants themselves an indefinite extension of time
to "gather information." *Id.* at 15. Defendant asserted that more than 400 plaintiffs had punted
on their RFA and interrogatory responses with the "gathering information" response. *Id.*
Defendant provided some examples. *Id.* And defendant prepared a list of plaintiffs who have
answered interrogatories and RFAs with these cryptic, non-responsive responses. *Id.* (citing
Doc. 121-1 at 264–77). For a remedy, defendant asked the court to order the offending plaintiffs
"who have answered the [RFAs] with 'gathering information' or anything similar admit those
items and Plaintiffs who answered the Interrogatories the same way must resubmit compliant
responses in seven days or face dismissal[.]" *Id.* at 24.

Plaintiffs disagreed, of course. They took issue with defendant's methods, declaring this
"another instance where Textron has tried to lump the majority of Plaintiffs into a category of
deficient responders and fails to even identify the responses it claims to be deficient." Doc. 155
at 10. That is, plaintiffs claim defendant asserted that 400 plaintiffs had responded to discovery
improperly but cited just one example. *Id.* Plaintiffs also responded that "there is nothing *per se*
improper about the phrase 'gathering information[.]'" *Id.* at 10–11. Plaintiffs also pointed out
that the offending phrase appeared after plaintiffs had provided detailed answers. *Id.* at 11.
Plaintiffs explained that they used this phrase "to afford [them] the opportunity to supplement

their response if more information was gathered[.]" *Id.*  And plaintiffs asserted that they had

agreed to provide the information and were supplementing their responses.  *Id.*

The Magistrate Judge recommended dismissal of all claims by each plaintiff who

responded to the interrogatories and RFAs simply with "gathering information."  Doc. 179 at 17.

He cited Fed. R. Civ. P. 36, which governs RFAs, and requires parties to admit, specifically

deny, or provide in detail why the responding party can't admit or deny the RFA.  *Id.* at 14.  The

Magistrate Judge explained that plaintiffs' evasive responses to RFAs and interrogatories

impermissibly granted themselves an indefinite extension of time to "gather information."  *Id.* at

15.  He pointed out that nine months had passed since defendant served the discovery.  *Id.* at 15–

16.

The Magistrate Judge also addressed plaintiffs' argument about individualized proof.  He

acknowledged that our local rules require parties filing discovery-related motions to attach the

disputed discovery responses.  *Id.* at 16 (citing D. Kan. Rule 37.1(b)).  But the Magistrate Judge

found defendant's approach—providing an appendix with a list of plaintiffs who had answered

improperly—"both efficient and common-sensical[.]"  *Id.*  The Magistrate Judge found it

"impractical for the Court to review responses to the 442 separate discovery requests contained

in Defendant's appendix."  *Id.*  Also, he noted, plaintiffs didn't dispute the list's validity.  *Id.*

### 5.  *No Documents*

Defendant's Motion to Compel also asserted that 74 plaintiffs had produced no

documents.  Doc. 121 at 16.  Defendant also complained that 41 additional plaintiffs had

"produced nothing besides a publicly available printout from the FAA website."  *Id.*  Defendant

argued that these 115 plaintiffs no longer wanted to participate in the case and, as a remedy,

asked the court to "permit Plaintiffs seven days to complete their production or face dismissal."

*Id.* at 24.  Defendant provided an appendix that listed the 115 plaintiffs who "have not made any significant production of documents[.]"  Doc. 121-1 at 279–82.

Plaintiffs acknowledged that some plaintiffs haven't produced any documents.  But they also asserted that plaintiffs already had informed defendant that they planned to remove 57 of those plaintiffs.  Doc. 155 at 11.  Plaintiffs' counsel conceded that dilatory plaintiffs were an issue and asked the court for 60 days to afford these dilatory plaintiffs one last chance.  *Id.* at 12.

The Magistrate Judge recommended that the court dismiss all 115 plaintiffs—including both those who hadn't produced anything and those who produced no more than an FAA website printout—for failing to participate in discovery.  Doc. 179 at 19.  He saw "no equitable justification for allowing Plaintiffs' counsel yet another attempt to beg involvement from Plaintiffs that are clearly disinterested or unmotivated to actively participate in this litigation."  *Id.*  And the Magistrate Judge remained unimpressed that these plaintiffs had failed to meet the court's May 12 deadline.  *Id.*

### 6.  *No Communications*

Defendant's Motion to Compel asserted that only 28 plaintiffs had produced any communications, with 30 communications produced in total.  Doc. 121 at 16.  Defendant argued that plaintiffs had no excuse for their failures because they had failed to object (or to object properly) to the RFPs.  *Id.* at 16–17.  Defendant argued that plaintiffs' initial, global response to the RFPs was "not a proper response and therefore constitutes a waiver of all objections."  *Id.* at 17.  And defendant pointed out that many RFPs sought communications, plaintiffs didn't object, and yet many plaintiffs still failed to produce communications.  *Id.*

Defendant also argued that plaintiffs' failure to produce communications matters because "this is a case *about* communications[.]"  *Id.*  In defendant's view, plaintiffs' fraud and deception claims require plaintiffs to produce the alleged misrepresentations, communications, and false

14

assurances.  *Id.*  Without disclosure of these communications, defendant asserted, it cannot

defend itself.  *Id.*  Defendant argued that "Plaintiffs must produce the evidence to support such

claims or their claims must be dismissed."  *Id.* at 18.

In response, plaintiffs called this argument "vague and misplaced."  Doc. 155 at 12.

Plaintiffs again faulted defendant for just providing examples without specifying the improper

responses individually.  *Id.*  And, plaintiffs argued, no basis for a dismissal penalty exists.  *Id.*

Plaintiffs admitted that some plaintiffs failed to produce documents.  *Id.*  But others, plaintiffs

asserted, simply don't have any communications to produce.  *Id.*

The Magistrate Judge recommended that the court dismiss all plaintiffs who failed to

produce communications.  Doc. 179 at 22.  He explained that plaintiffs' case relies on

communications with defendant and defendant's RFPs requested communications explicitly.  *Id.*

at 20–21.  The Magistrate Judge also held that plaintiffs had failed to submit timely responses

and, as a result, waived any objections to the document requests for communications.  *Id.*

### 7.  *Copied and Pasted Answers*

Now, the final issue:  Defendant's Motion to Compel asserted that plaintiffs had copied

and pasted identical, non-responsive answers to two of defendant's interrogatories.  Doc. 121 at

18.  Defendant complained about this method, arguing that this pattern demonstrated plaintiffs'

attempt to treat this case like a class action by failing, yet again, to produce individual responses.

*Id.*  Defendant also complained about the substance of responses to individual interrogatories.

First:  Interrogatory No. 2.  This interrogatory asked plaintiffs to "[d]escribe with

particularity any 'cracking' to Your Aircraft, including the date You first noticed any such

'cracking,' steps You took in response to any such 'cracking,' and the date(s) you took those

steps."  Doc. 121-1 at 13–14.  Defendant asserts that "[e]very Plaintiff to respond to

Interrogatory No. 2 has copy-pasted an identical paragraph, sometimes adding a short extra blurb

toward the end." Doc. 121 at 20.  Defendant provided the following example of this generic

response:

> The cracking appears around the windows, pilot side and co-pilot side both cockpit
> and passenger, and/or around the windscreen.  Cracking appears to be parallel to
> the shape of the window and windscreen with some departures from those shapes
> at the corners of the cracking, that move out perpendicular to the shape of the
> window/windscreen.  Cracks appear to go through the paint and into the composite
> material and varied from small surface cracks to deeper cracks that appear to travel
> through the structure.
>
> The cracking on Plaintiffs' aircraft spread to and cracked the actual window in 2021
> requiring repair.
>
> Plaintiffs also refer requesting party to their production of documents in response
> to Request for Production #3 which seeks photographs depicting the cracking.
>
> Plaintiffs reserve the right to amend and/or supplement these responses.

Doc. 121-1 at 288–89.  Defendant argued that these evasive responses were copied and pasted.

Doc. 121 at 21.

As evidence that plaintiffs actually copied and pasted their responses, defendant proffered

one plaintiff's interrogatory response.  It included a highlighted menu of options for plaintiffs to

use when responding.  *Id.* at 21–22.  Here's what the highlighted menu looked like:



Doc. 121-1 at 297.  Defendant noted that this menu doesn't include an option to respond for an aircraft that hasn't experienced any cracking.  Doc. 121 at 22.

Second:  Interrogatory No. 4.  According to defendant, the responses to Interrogatory No. 4 presented a similar copy and paste problem.  It asked plaintiffs to

> Identify and describe with particularity each and every alleged misstatement or misrepresentation made by Textron Aviation to You that you rely up on for any claim alleged in your Complaint regarding the Aircraft, including the time of each alleged misstatement or misrepresentation, the individual or individuals who made the misstatement or misrepresentation, and your reaction to the misstatement or misrepresentation, consistent with the particularity requirements of Federal Rule of Civil Procedure 9.

Doc. 121-1 at 13–14.  Defendant asserted that "nearly every Plaintiff to respond has submitted a verbatim answer . . . but for occasional trivial differences in one or two words[.]"  Doc. 121 at 19.  Defendant provided the following example response from a plaintiff:

> Objection.  Plaintiffs object to the extent that defendant asserts a response must be in accordance with FRCP 9.  Subject to and without waiving said objections, Plaintiffs respond to this interrogatory.  Plaintiffs reserve the right to amend and/or supplement these responses.

> Cessna has put out to the community including through CAAC that these cracks are only cosmetic and that they would repair them.  At the time, no repair has been offered, and certain aircraft have had cracks travel through the actual windows.

*Id.* at 19–20 (citing Doc. 121-1 at 185).  Defendant argued that this "is not a good faith effort to respond."  *Id.* at 20.  Defendant also argued that it's not possible for plaintiffs to claim that defendant defrauded all of them the same way.  *Id.*

For those plaintiffs who submitted copied and pasted answers, defendant asked the court to order plaintiffs "to submit new, compliant responses within seven days or face dismissal."  Doc. 121 at 24.  Defendant, referencing the highlighted menu issue, added, "[t]ruth-as-an-afterthought litigating is sanctionable."  *Id.* at 22.  But defendant didn't move for sanctions.  Instead, defendant concluded, "For now, it suffices to note that this copy-and-paste response

confirms that Plaintiffs are not taking seriously their duty to respond to discovery as *individuals*." *Id.* (emphasis in original).

Plaintiffs' response to defendant's argument about these two interrogatories immediately addressed the menu of interrogatory responses. Doc. 155 at 13. Plaintiffs asserted that the menu was a privileged attorney-client communication that they deserved to claw back. *Id.* And plaintiffs argued that defendant behaved unprofessionally and contrary to the Rules of Professional Conduct by failing to notify plaintiffs promptly that plaintiffs had produced an attorney-client communication erroneously. *Id.* In plaintiffs' view, defendant's "actions are unprofessional and should not be rewarded." *Id.*

Plaintiffs also argued that they'd done nothing improper. *Id.* Plaintiffs argued that their response to Interrogatory No. 2 wasn't improper because their aircrafts' cracking "is far and away similar across this fleet of aircraft." *Id.* at 14. Plaintiffs directed defendant to photos plaintiffs had produced showing cracking. *Id.* And plaintiffs argued there was "nothing improper about the similarity in Plaintiffs['] responses to" Interrogatory No. 4. *Id.*

The Magistrate Judge disagreed with plaintiffs. Doc. 179 at 26. Focusing solely on plaintiffs' responses, he held that defendant had a valid concern that the menu of interrogatory response options didn't include an option for aircrafts which hadn't experienced any cracking. *Id.* And the Magistrate Judge agreed with defendant: these copy and paste responses demonstrated that plaintiffs had failed to respond to discovery as individuals. *Id.* The Magistrate Judge concluded, "Having failed to provide interrogatory responses from the individual Plaintiffs, the Court **recommends** to the District Court that Plaintiff[s'] claims be **DISMISSED**." *Id.* (emphases in original).

### *Remedy*

The court has identified the remedy defendant sought for each discovery shortcoming. Plaintiffs, in response, argued that none of the discovery shortcomings warranted dismissal. Doc. 155 at 15.  Plaintiffs asserted that they hadn't acted in bad faith—to the contrary, they asserted—they'd worked "tirelessly to provide responsive documents, answers, and admissions." *Id.*  Plaintiffs also argued that defendant sustained little prejudice and remedies short of dismissal would suffice.  *Id.*  Plaintiffs asked for 60 days to resolve the outstanding discovery issues.  *Id.* at 16.

Defendant's reply brief turned up the heat another notch.  In their opening brief, defendant had asked the court to give plaintiffs seven days to produce documents and proper responses or dismiss the case.  *See* Doc. 121 at 24.  But in its reply, defendant argued that dismissal was the only suitable remedy.  Doc. 158 at 7.  In support, defendant asserted that plaintiffs were culpable because their own attorneys had admitted that plaintiffs were dilatory. *Id.*  Defendant also argued that the court had given plaintiffs a final warning in March noting that complete discovery responses were due by May 12, 2023.  *Id.*  Defendant asserted that these discovery issues have imposed prejudice because defendant has expended significant resources but not yet received the responses mandated by the Federal Rules of Civil Procedure.  *Id.* Without plaintiffs' information, defendant asserted that it had struggled to conduct discovery and couldn't determine how it should sort plaintiffs into groups for focused discovery.  *Id.*

As explained above, the Magistrate Judge agreed, and recommended the discovery sanction of dismissal.  *See generally* Doc. 179.  Plaintiffs filed timely objections to his Report and Recommendation.  Doc. 194.  And defendant filed a response to plaintiffs' objections.  Doc. 200.

Now, the court turns to the decisions plaintiffs have asked the court to review.  It begins

with the legal standard governing its analysis of the Magistrate Judge's Report and

Recommendation.

## II.        Legal Standard

The Magistrate Judge's order ruled on both dispositive and non-dispositive issues.  The

district court applies different legal standards to evaluate recommendations on dispositive versus

non-dispositive matters.  The court outlines those discrete standards, below.

### A.        Dispositive Matters

Fed. R. Civ. P. 72(b)(2) provides that, after a magistrate judge provides a recommended

disposition on a dispositive matter, a party may serve and file specific, written objections to the

magistrate judge's order within 14 days after service of the recommended disposition.  Then,

under Fed. R. Civ. P. 72(b)(3), the district court "must determine de novo any part of the

magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *see*

*also* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of

those portions of the report or specified proposed findings or recommendations to which

objection is made.").  After making this determination, the district court "may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge . . .

[or] may also receive further evidence or recommit the matter to the magistrate judge with

instructions."  28 U.S.C. § 636(b)(1)(C).

"In conducting a de novo review, the Court must consider relevant evidence of record

and not merely review the magistrate judge recommendation."  *Kelly-Leppert v. Monsanto/Bayer*

*Corp.*, No. 20-2121-KHV, 2020 WL 2507634, at *2 (D. Kan. May 15, 2020) (citing *Griego v.*

*Padilla*, 64 F.3d 580, 584 (10th Cir. 1995)).  And a court may "receive further evidence" when

deciding an objection to the magistrate judge's recommendations.  *See* 28 U.S.C. § 636(b)(1)(C);

*see also* Fed. R. Civ. P. 72(b)(3). "Whether to receive additional evidence is committed to the Court's sound discretion." *Kelly-Leppert*, 2020 WL 2507634, at *2 (citing *Henderson v. Echostar Commc'ns Corp.*, 172 F. App'x 892, 895 (10th Cir. 2006)).

### B.      Non-Dispositive Matters

When reviewing a magistrate judge's order deciding nondispositive pretrial matters, the district court applies a "'clearly erroneous or contrary to law'" standard of review. *See First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461–62 (10th Cir. 1988)); *see also* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Under this clearly erroneous standard, a district judge does not review factual findings de novo; instead, it must affirm a magistrate judge's findings unless a review of the entire evidence leaves the district judge "with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp.*, 847 F.2d at 1464 (citation and internal quotation marks omitted). In contrast, "the contrary to law" standard permits a district judge to conduct an independent review of purely legal determinations made by the magistrate judge. *Sprint Commc'ns Co. L.P. v. Vonage Holdings Corp.*, 500 F. Supp. 2d 1290, 1346 (D. Kan. 2007) (citations omitted). A magistrate judge's order is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Walker v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, No. 09-1316-MLB, 2011 WL 2790203, at *2 (D. Kan. July 14, 2011) (citation omitted).

## III.      Analysis

The court's analysis develops in this fashion: the court first addresses three threshold issues, then it analyzes the Magistrate Judge's non-dispositive recommendations and, last, proceeds to his dispositive recommendations.

*First*, as a threshold matter, the court addresses defendant's complaint about the length of this case and the current discovery disputes.  In its response to plaintiffs' objection, defendant wrote:

> If ever there were a case in which discovery failures called for dismissal, this would be it.  [The Magistrate Judge] issued his decision four years into this litigation, nine months after Defendant served the discovery at issue, six months after Plaintiffs' twice-extended discovery deadline had expired, and three months after Plaintiffs shrugged off [the Magistrate Judge's] clear and unequivocal deadline to provide complete formal responses.

Doc. 200 at 6 (citation and internal quotation marks omitted).  The court just doesn't agree with defendant's account.  It is of no moment for defendant to complain that this case has remained pending for four years when defendant joined requests to stay the case for 18 months, from June 2020 to December 2021.  *See* Doc. 41 (asking—jointly—that the court to stay the action for 120 days); *see also* Doc. 52 (requesting—jointly—a status conference in early 2022).  The Magistrate Judge entered the case's first Scheduling Order in August 2022, and that order envisioned an agreement "on 20 representative plaintiffs for . . . priority discovery" with a report on the representative plaintiffs due in October 2022.  Doc. 57 at 5.  Defendant didn't begin litigating this case in earnest or serve the discovery requests at issue until November 2022.  And, when defendant served those discovery requests, defendant agreed to give plaintiffs a 60-day extension to respond.  So, the court doesn't buy defendant's complaints about all the case's delays because defendant contributed to many of them.  The court only concerns itself with the current discovery dispute.  And this discovery's first deadline was in February 2023, rendering this case's age largely immaterial.

*Second*, the court notes that *both* sides have failed to confront the case's defining reality: it's one brought by 600+ *individual* plaintiffs.  This immutable reality notwithstanding, both sides of the caption have treated this as a representative action whenever it's convenient to do so.

For example, in February 2023, plaintiffs submitted a single, initial response to defendant's discovery. *See* Doc. 121-1 at 44–68; *Id.* at 70–97; *Id.* at 99–126. They submitted it on behalf of all plaintiffs. *See id.* at 44–68; *Id.* at 70–97; *Id.* at 99–126. That was inadequate. Defendant's first set of interrogatories specifically "demand[ed] that each and every Plaintiff answer each Interrogatory separately, completely, and under oath[.]" *Id.* at 7. Same for the RFAs, *Id.* at 17, and the RFPs, *Id.* at 28. But defendant has its own moments of culpability. Defendant's Motion to Compel asserts that plaintiffs have failed their discovery obligations by the hundreds—but provides just a few examples. *See generally* Doc. 121. Defendant cured some of this issue by providing lists of offending plaintiffs. This issue—failing to treat plaintiffs as individuals— matters because plaintiffs now object on this basis.

Plaintiffs object to the Magistrate Judge's Report and Recommendation because, plaintiffs assert, he failed to address plaintiffs individually. Plaintiffs object that the Magistrate Judge, though he criticized plaintiffs for filing this action with 600+ plaintiffs rather than as a class action, "address[ed] Plaintiffs *collectively* rather than individually." Doc. 194 at 7. Plaintiffs argue that the Magistrate Judge's failure to consider each plaintiff's individual participation in discovery deprived each plaintiff of the right to individual review of their actions before dismissal. *Id.* Plaintiffs cite D. Kan. Rule 37.1(b); it provides: "Discovery-related motions must be accompanied by copies of the . . . interrogatories, requests, or responses in dispute."

This places the court in a difficult position. Plaintiffs ask this court to tell a magistrate judge to spend countless hours reviewing hundreds of discovery responses. But plaintiffs themselves treat this case as a representative action when it's convenient to do so. In any event, the court considers this objection moot because, as explained below, it declines to dismiss any

plaintiff's claims.  So, the court hasn't deprived plaintiffs of the individualized review they demand.

*Third*, plaintiffs' objection points out that the Magistrate Judge didn't allow the parties to present oral argument on the Motion to Compel.  Both parties requested oral argument.  Doc. 120 at 1; Doc. 155 at 2.  And the Magistrate Judge issued the Report and Recommendation without conducting oral argument.  Under D. Kan. Rule 7.2, the Magistrate Judge had discretion to set the motion for oral argument.  Though the Magistrate Judge doesn't explain his decision not to hold oral argument, the court can't conclude that this decision caused plaintiffs any harm. The parties' papers explained all issues fully.

With these threshold issues addressed, the court now turns its attention to reviewing the Magistrate Judge's non-dispositive recommendations.

### A.        Non-Dispositive Recommendations

The Magistrate Judge's Report and Recommendation decided two non-dispositive, pretrial matters.  He overruled plaintiffs' conditional objections and their boilerplate objections to the discovery requests.  Plaintiffs objected to both decisions.  The court applies the clearly erroneous or contrary to law standard of review to the Magistrate Judge's decisions, in turn, below.  Then, it addresses plaintiffs' objection to the Magistrate Judge's recommended remedy for the offending objections.

### 1.        Conditional Objections

Start with the definition of conditional objection.  A party makes a "conditional objection" to discovery when it "asserts objections, but then provides a response 'subject to' or 'without waiving' the stated objections."  *Westlake v. BMO Harris Bank N.A.*, No. 13-2300-CM-KGG, 2014 WL 1012669, at *3 (D. Kan. Mar. 17, 2014) (citation omitted).  Our court has "recognize[d] that it has become common practice among many practitioners to respond to

discovery requests by asserting objections then answering 'subject to' or 'without waiving' their objections." *Sprint Commc'ns Co. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL, 2014 WL 545544, at *2 (D. Kan. Feb. 11, 2014).  But just as surely, our court has "conclud[ed] that such conditional answers are invalid and unsustainable." *Id.*; *see also id.* at *2–3 (collecting authorities).  Plaintiffs don't deny that they made conditional objections.

The Magistrate Judge thus applied the law correctly when he overruled plaintiffs' conditional objections.  Doc. 179 at 12.  Plaintiffs assert that he failed to "elaborate on how any of *Plaintiffs' specific responses* qualify as" conditional responses.  Doc. 194 at 5 (emphasis in original).  Plaintiffs assert that "[t]his lack of analysis is contrary to law, as it does not even apply the law to the facts and circumstances at issue." *Id.*  They're wrong.

The Magistrate Judge's Report and Recommendation identified the specific interrogatories and RFAs for which plaintiffs asserted conditional objections.  Doc. 179 at 10– 11.  He also explained conditional objections and their inherent problems. *Id.*  And plaintiffs don't dispute that they asserted conditional objections.  Perhaps conditional objections remain common practice elsewhere, but our court has rejected them consistently for years.  The court thus overrules plaintiffs' objection to the Magistrate Judge's decision to overrule all of their conditional objections.

## 2.    Boilerplate Objections

The Magistrate Judge also overruled plaintiffs' boilerplate objections.  Boilerplate objections are  "general objections either not linked to a specific request, or objections within a specific request but which are so general in nature that the requesting party cannot determine whether information or documents are being withheld pursuant to the objection." *Nyanjom v. Hawker Beechcraft, Inc.*, No. 12-1461-JAR-KGG, 2014 WL 2135997, at *1 (D. Kan. May 22, 2014).  This court routinely rejects boilerplate objections, though practitioners commonly—and

inexplicably—assert them anyway.  *See id.*; *Caredenas v. Dorel Juvenile Grp, Inc.*, 232 F.R.D. 377, 381 (D. Kan. 2005) ("As this Court has previously held, a general objection does not fulfill a party's burden to explain its objections; the objecting party is required to substantiate its general objection.") (collecting cases); *see also Liguria Foods, Inc. v. Griffith Lab'ys, Inc.*, 320 F.R.D. 168, 170 (N.D. Iowa 2017) (wondering "why excellent, thoughtful, highly professional, and exceptionally civil and courteous lawyers are addicted to 'boilerplate' discovery objections" and "why does this widespread addiction continue to plague the litigation industry when . . . [no] judicial decision or rule of civil procedure from any jurisdiction in the United States, state or federal . . . authorizes, condones, or approves of this practice").

Plaintiffs never deny that they made boilerplate objections.  Instead, plaintiffs' objection focuses on the meet and confer process.  Plaintiffs object to the Magistrate Judge's conclusion that defendant fulfilled its duty to meet and confer about the boilerplate objection issue.  Doc. 194 at 5.  A failure to meet and confer violates D. Kan. Rule 37.2.  It provides:  "The court will not entertain any motion to resolve a discovery dispute . . . unless the attorney for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion."  D. Kan. Rule 37.2.  To fulfill their meet and confer duty, the parties must "in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so."  *Id.*  Plaintiffs argue that, by failing to meet and confer, defendant violated its Rule 37.2 duty and the court thus can't consider this argument.

Ultimately, it doesn't matter whether defendant met and conferred with plaintiffs about their boilerplate objections.  The Magistrate Judge had discretion "to determine a motion to compel on its merits even when the duty to confer has not been fulfilled under certain circumstances."  *Stephenson v. Young*, No. 10-2197-KHV-KGG, 2010 WL 4961709, at *2 (D.

Kan. Nov. 29, 2010). And the Magistrate Judge did exactly that. He concluded that defendant met and conferred with plaintiffs about the issue and, critically, concluded: "Either way, the general, boilerplate objections are clearly improper and are overruled." Doc. 179 at 13 (emphasis omitted). The "[e]ither way" in that sentence reveals that the Magistrate Judge exercised his discretion to overrule the manifestly improper boilerplate objections—whether defendant had fulfilled its meet and confer duty, or not. The Magistrate Judge used his discretion permissibly and the court finds no clear error in this decision. The court thus overrules plaintiffs' objection to the Magistrate Judge's decision about plaintiffs' boilerplate objections.

The court pauses briefly to ponder why plaintiffs tried to save these plainly improper boilerplate objections. The court worries that the boilerplate objection dispute signals upcoming delays while the parties litigate every issue to its death knell—an emerging pattern. The court warns the parties. Going forward, it will not treat frenzied, combative discovery processes favorably. To this end, the court urges the parties to cure their useless addiction to boilerplate objections.

### 3.      Remedy

The Magistrate Judge, having overruled plaintiffs' conditional and boilerplate objections, fashioned a remedy. On plaintiffs' overruled conditional objections, he ordered plaintiffs "to respond to the corresponding Interrogatories without further objection and to admit or deny the Requests for Admissions" by filing supplemental responses within 30 days. Doc. 179 at 12 (emphasis omitted). Similarly, for the overruled general objections, he ordered plaintiffs to serve "supplemental answers not restricted by the objections" within 30 days. *Id.* at 13–14 (emphasis omitted).

Plaintiffs object to this remedy. They assert the "ordered remedy is partial, vague, . . . [,] impossible to comply with[,]" and "far too burdensome and harsh." Doc. 194 at 6. Rather than

re-draft discovery responses, plaintiffs argue a "much more reasonable and obvious remedy is to simply strike the objections, which carries the same force without any undue prejudice to Defendant." *Id.* But "reasonableness" isn't the standard that governs this inquiry. Instead, the court must ask whether the Magistrate Judge's remedy is clearly erroneous or contrary to law. It's not.

The court thus overrules plaintiffs' objection to this remedy. Plaintiffs complain that the proposed remedy is "improper" and "burdensome." *See id.* But the difficulty of complying with discovery doesn't equate to clearly erroneous or contrary to law. Plaintiffs don't identify any facts supporting clear error. And plaintiffs have failed to identify a statute, case, or rule that required the Magistrate Judge to impose a different remedy, so his remedy wasn't contrary to law. The court, with this Order, thus restarts the Magistrate Judge's clock, with a slight extension: plaintiffs have 40 days[2] from the date of this Order to comply with the Magistrate Judge's orders on conditional objections and boilerplate objections.

With plaintiffs' objections to the Magistrate Judge's non-dispositive rulings overruled, the court now turns to the Magistrate Judge's dispositive rulings.

## B.   Dispositive Recommendations

As mentioned above, the Magistrate Judge recommended dismissal of all claims asserted by plaintiffs who had committed the following discovery violations:

- Failing to verify interrogatory responses;

- Answering interrogatories and RFAs with "gathering information";

- Producing no documents;

- Producing no communications;

---

[2]   The court grants plaintiffs 40 days, instead of 30, to meet this obligation due to the intervening holiday.

- Copying and pasting answers.

Plaintiffs objected to the Magistrate Judge's analysis of each discovery issue and, separately, the proposed discovery sanction of dismissal. Because dismissal is a dispositive sanction, the court applies de novo review. Fed. R. Civ. P. 72(b)(3).

### 1.      Failure to Verify Interrogatories

The Magistrate Judge recommended that the court dismiss plaintiffs who have failed to provide verified answers to defendant's interrogatories. Doc. 179 at 10. As one would expect, plaintiffs object to this dispositive sanction. Doc. 194 at 10–12. The court reviews the relevant law, the Magistrate Judge's decision, and plaintiffs' objection, below.

Fed. R. Civ. P. 33 requires a party to answer "[e]ach interrogatory . . . separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). And the "person who makes the answers must sign them[.]" Fed. R. Civ. P. 33(b)(5). When a party fails to provide responses under oath, this court generally orders the party to resubmit supplemental interrogatory responses with the proper verification. *See Azim v. Tortoise Cap. Advisors, LLC*, No. 13-2267-DDC, 2015 WL 1268021, at *1 (D. Kan. Mar. 19, 2015). Without proper verification, the parties can't use the interrogatories as evidence. *See Stanley v. Sure Check Brokerage, Inc.*, No. 14-2510-EFM, 2015 WL 5781987, at *1 (D. Kan. Oct. 1, 2015).

Plaintiffs' counsel acknowledge that some plaintiffs failed to verify their interrogatories. Doc. 194 at 10. But, plaintiffs argue, they had valid objections to those interrogatories. *Id.* Unfortunately for them, plaintiffs and their argument on this front rely on their general and conditional objections—objections the Magistrate Judge correctly overruled. *See above* § III.A. As explained above, general objections plainly are improper. Nor could plaintiffs rely on conditional objections: if counsel asserted an objection to an interrogatory, but a plaintiff answered anyway, then Rule 33(b)(3) required plaintiff to answer "under oath." And nowhere

do plaintiffs cite authority for the proposition that a plaintiff can decline to comply with the verification requirement of Rule 33 if they respond simply by asserting objections. The court thus overrules this part of plaintiffs' objection.

For those plaintiffs who failed to comply with Rule 33's verification requirement, the court must fashion an appropriate sanction. Plaintiffs object to the Magistrate Judge's remedy, asserting that dismissal is far too harsh a sanction. To evaluate this sanction de novo, the court recites the law governing dismissal sanctions for discovery shortcomings. This legal standard is critical—it applies to all five discovery issues for which the Magistrate Judge recommended dismissal.

### a.   Dismissal Sanction Legal Standard

Fed. R. Civ. P. 37(b)(2)(A) allows courts to sanction a party for failing to comply with a discovery order. It grants courts the power to "issue further just orders"—including "dismissing the action or proceeding in whole or in part[.]" Fed. R. Civ. P. 37(b)(2)(A)(v). Our Circuit has recognized "that dismissal represents an extreme sanction appropriate only in cases of willful misconduct." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992) (citations omitted). So, in "many cases, a lesser sanction will deter the errant party from further misconduct." *Id.* And our Circuit also has cautioned that, because "dismissal with prejudice defeats a litigant's right [of] access to the courts, it should be used as a weapon of last, rather than first, resort." *Id.* (citation and internal quotation marks omitted).

District courts have discretion when fashioning an appropriate remedy because determining "the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make" *Id.* But there are limits. "The district court's discretion to choose a sanction is limited in that the chosen sanction must be both 'just' and 'related to the particular "claim" which was at issue in the order to provide discovery.'" *Id.* (quoting *Ins. Corp.*

30

*of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)).  To determine

whether a dismissal sanction is just, our Circuit has provided five factors—the so-called

*Ehrenhaus* factors—for courts to apply.  They consider:

> (1) "the degree of actual prejudice to the defendant;"
>
> (2) "the amount of interference with the judicial process;"
>
> (3) "the culpability of the litigant;"
>
> (4) "whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and
>
> (5) "the efficacy of lesser sanctions."

*Id.* at 921 (internal citations and quotation marks omitted).  The court may impose a dismissal

sanction only "when the aggravating factors outweigh the judicial system's strong predisposition

to resolve cases on their merits[.]"  *Id.* (citation and internal quotation marks omitted).

Without question, the Magistrate Judge correctly recited this legal standard.  Doc. 179 at

28–29.  The more difficult question is whether he applied it correctly.  As a threshold matter, the

court notes that the Magistrate Judge's Report and Recommendation, following the pattern of the

parties' briefing, cites the *Ehrenhaus* factors in two places.  First, it mentions *Ehrenhaus* when

addressing plaintiffs' failure to verify the interrogatory responses.  *Id.* at 9–10.  Then, the

Magistrate Judge discusses *Ehrenhaus* a second time in the Report and Recommendation's

"Remedy" section.  *Id.* at 26–33.  The "Remedy" section consists of a global discussion of the

*Ehrenhaus* factors.  *Id.*  The court doesn't believe that the Magistrate Judge erred in following

the lead of the parties, but it nonetheless takes a different approach.

This court, applying de novo review, reviews the *Ehrenhaus* factors for each discovery

violation, individually.  The court performs this violation-by-violation review because, in its

view, each discovery violation could deserve a different sanction under the *Ehrenhaus* factors.

For example, the prejudice caused by a plaintiff who fails to verify interrogatories differs from the prejudice caused by a plaintiff who refuses to participate in discovery at all. And while accumulating a party's discovery abuses might produce a different result, that principle doesn't apply here—at least not on the current record.

The court now applies the *Ehrenhaus* factors to determine whether to dismiss those plaintiffs who failed to verify their interrogatories.

### b.   *Ehrenhaus* Factors:  Failure to Verify Interrogatories

### i.        Prejudice

Start with prejudice. The Magistrate Judge disagreed with plaintiffs' argument that the discovery issue caused minimal prejudice to defendant, finding the argument "at best, insincere." Doc. 179 at 30. He concluded:

> Plaintiffs' counsel cannot discount the time, effort, and expenses expended by Defendant's attempts to wrangle valid discovery response from Plaintiffs. The Court does not discount the time, effort, expense and frustrations incurred through Plaintiffs' counsel's efforts to compile the discovery response. That stated, as the District Court so eloquently expressed, Plaintiffs "chose to bring this case as 748 individual claims" and they "must deal with the consequences of that choice."

*Id.* (citing Doc. 105 at 26). Plaintiffs object that this issue caused defendant little prejudice, if any. Doc. 194 at 10. The court agrees.

To be sure, failing to verify interrogatory responses prevents defendant from using these responses as evidence. But this case—regrettably—still isn't far enough along for this to present a meaningful problem. Infamously, it's still in discovery. And, critically, plaintiffs provided the information. Even without a verification, defendant can analyze the interrogatory responses, identify inconsistencies with other discovery responses, and formulate a legal strategy. The court understands that defendant has spent time, effort, and expense here, but that's true of every

discovery dispute.[3]  The court thus concludes that failing to verify interrogatories has caused

defendant little prejudice at this stage of the case.  This first *Ehrenhaus* factor thus weighs

against dismissal.

### ii.        Interference with Judicial Process

The second *Ehrenhaus* factor evaluates the extent of interference, if any, with the judicial

process.  The Magistrate Judge's Report and Recommendation mentioned that plaintiffs had

defied his May 12 deadline.  Doc. 179 at 32.  Plaintiffs don't deny that they missed this deadline

to submit complete discovery responses.  Indeed, it's undisputed that hundreds of plaintiffs had

failed to verify their interrogatory responses by the court's deadline of May 12.  This factor thus

favors dismissal.

### iii.        Culpability

That finding leads the court to the third *Ehrenhaus* factor:  culpability of the litigant.  As

mentioned above, our Circuit has instructed district courts "that dismissal represents an extreme

sanction appropriate only in cases of willful misconduct."  *Ehrenhaus*, 965 F.2d at 920 (citations

omitted).  Plaintiffs' response to the Motion to Compel asserted that "there [was] no evidence of

bad faith on the party of any individual plaintiff or collectively."  Doc. 155 at 15.  The

Magistrate Judge disagreed.  In the portion of his Order addressing dismissal generally, the

Magistrate Judge concluded

> Whether the fault of counsel for being unable to manage 700+ Plaintiffs or the fault
> of a large number of these Plaintiffs being clearly disinterested in proceeding with

---

[3]        Defendant asserts that it has suffered prejudice because it "has noticed multiple Plaintiffs for
depositions (after researching those Plaintiffs) only to be told the Plaintiff is dropping from the case
altogether; one Plaintiff who initially said his plane *was* cracked file a new interrogatory response the day
before his deposition conceding that *no cracks are visible.*"  Doc. 158 at 7 (emphases in original).  The
court is extremely concerned about unfounded, incorrect, or fraudulent discovery responses, but this
argument is a red herring.  Defendant's Motion to Compel focused on its initial discovery requests, so the
court limits its inquiry accordingly.

> this litigation, the litany of discovery failures discussed herein clearly constitutes either bad faith or a lack of faith entirely.
>
> Plaintiffs contend that they continue to work tirelessly to provide response documents, answers, and admissions.  These issues have been evident since November of last year.  If Plaintiffs continue to work tirelessly, the Court surmises they are nearing the point of exhaustion.  Regardless, they have exhausted the Court's patience.

Doc. 179 at 30 (internal citation and quotation marks omitted).  Plaintiffs' objection blames their failure to verify interrogatories on their other discovery obligations.  Plaintiffs "have been prioritizing their duties, with an eye to getting information and documents to Defendant, preparing to mediate in good faith, and even offering up their aircraft for inspections[.]"  Doc. 194 at 11.

The court, reviewing culpability de novo, cannot conclude that plaintiffs' culpability favors dismissal.  To be sure, plaintiffs blew the deadline.  But on the current record, the court can't assign blame for this outcome.  As defendant points out, it's the *litigants*' culpability that matters to the *Ehrenhaus* analysis.  965 F.2d at 921.  The plaintiffs at issue here were engaged enough to respond to interrogatories, so it's not a lack of interest in the litigation.  And the court can't blame plaintiffs who submitted verifications after the deadline because this shows that those plaintiffs, at the least, tried to fulfill their obligations.

The record demonstrates plaintiffs' efforts.  When defendant filed its Motion to Compel on June 29, 2023, 81 plaintiffs had served verified interrogatory responses.  Doc. 121 at 11; Doc. 121-1 at 178–80.  By the time plaintiffs responded to the motion, 95 plaintiffs had served verifications and they were in the process of serving 45 more.  Doc. 155 at 7.  Plaintiffs' counsel asserted they "continue to work to obtain from clients and serve verifications as they come in."  *Id.*  By the time plaintiffs filed their objection to the Magistrate Judge's Report and Recommendation, they asserted that they had served 220 verifications.  Doc. 194 at 12.

Critically, plaintiffs asserted time and time again—from the first meet and confer letter to their Motion to Compel Response—that they were operating in good faith. *See* Doc. 121-1 at 137; Doc. 155 at 2. The Magistrate Judge's Report and Recommendation didn't explain why he didn't believe them. Plaintiffs' objection also reports that they didn't prioritize verifying their interrogatories because they had bigger fish to fry with their discovery responses. At bottom, plaintiffs' efforts undermine a finding of willful misconduct.

The court shares the Magistrate Judge and defendant's frustration with these delays and blown deadlines. The court also agrees: in discovery, plaintiffs must proceed as individuals because that's how they've chosen to assert their claims. And the court understands defendant's point that plaintiffs have five law firms representing them. Yet the court can't find, at least not on the current record, that plaintiffs failed to verify interrogatory responses because of willful misconduct or bad faith. The court thus concludes that the culpability factor weighs against dismissal.

### iv.      Warning

Next *Ehrenhaus* factor:  whether the court warned plaintiffs of the possibility of dismissal in advance. The Magistrate Judge acknowledged that he didn't warn plaintiffs that the discovery issues could lead to dismissal. Doc. 179 at 10. Instead, the Magistrate Judge relied on the May 12, 2023, deadline that he gave plaintiffs on March 6, 2023. *Id.* The Magistrate Judge called May 12 "a specific and unequivocal deadline . . . to provide complete formal responses to the underlying discovery." *Id.* Plaintiffs object to the Magistrate Judge's Report and Recommendation because he failed to warn them that failing to verify their interrogatory responses could lead to dismissal. Doc. 194 at 11.

The court agrees with plaintiffs.  Establishing a deadline doesn't warn of dismissal.  The Magistrate Judge relied on a case from our court as authority for dismissing a case for failure to verify interrogatory responses.  Doc. 179 at 9 (citing *In re:  CCA Recordings 2255 Litig.*, No. 19-cv-2491-JAR-JPO, 2021 WL 4124655 (D. Kan. Sept. 9, 2021)).  In that case, the COVID-19 pandemic prevented the incarcerated petitioner from signing the interrogatory responses.  *In re: CCA Recordings*, 2021 WL 4124655 at *2.  And, critically, petitioner's counsel "anticipat[ed] that this failure [to submit a signature] would result in dismissal."  *Id.*

It's undisputed that the Magistrate Judge didn't warn plaintiffs that failing to verify their interrogatories could lead to dismissal.  This factor thus weighs against a dismissal sanction.

### v.        Efficacy of Lesser Sanctions

The last *Ehrenhaus* factor inquires about the efficacy of lesser sanctions.  Defendant's Motion to Compel asked for the court, as a sanction, to dismiss plaintiffs who haven't verified their interrogatory responses or to grant those plaintiffs seven days to verify or face dismissal.  Doc. 121 at 24.  Plaintiffs asked the court for 60 more days to remedy the issue before considering any other discovery sanctions.  Doc. 155 at 16.  The Magistrate Judge declined plaintiffs' request for 60 more days.  He explained, "Plaintiffs seemingly ignore the fact that five months ago the Court gave Plaintiffs a deadline by which all this was to have [been] accomplished—and that deadline expired three months ago."  Doc. 179 at 32 (emphases omitted).

The court shares the Magistrate Judge's frustrations with plaintiffs who missed the May 12 deadline.  But the record shows that time solved part of the problem—more plaintiffs verified their interrogatory responses.  A sanction less than immediate dismissal could prove effective

here.  In this court's view, additional time, plus a dismissal warning, and potential cost-shifting consequences are more appropriate.  This factor thus weighs against dismissal.

### vi.        Summary of *Ehrenhaus* Factors Analysis

In sum, four *Ehrenhaus* factors weigh against dismissal, and one factor supports dismissal.  And the court, in its discretion, concludes that the fourth factor—warning—is most important here.  "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction."  *Ehrenahus*, 965 F.2d at 921 (citation and internal quotation marks omitted).  The court thus sustains plaintiffs' objection to the portion of the Magistrate Judge's Report and Recommendation that recommends dismissal of the claims by plaintiffs who failed to verify their interrogatory responses.  The court explores what this conclusion means for this case, next.

### c.        Remedy for Failure to Verify Interrogatories

Plaintiffs don't dispute that this is a problem they must rectify.  They couldn't do so credibly.  The obvious remedy:  plaintiffs must serve verified responses.  Plaintiffs thus have 40 days from the date of this Memorandum and Order to verify every interrogatory response.  The court orders the parties to file, jointly, a list of plaintiffs who have failed to verify their interrogatory responses within 55 days of this Order.  If plaintiffs and defendant disagree about who belongs on that list, the court directs them to prepare one list that:  (a) identifies those plaintiffs who indisputably have failed to verify; and (b) those plaintiffs where the verification requirement is disputed.  For the disputed plaintiffs, each party shall explain why that plaintiff has (or hasn't) supplied the requisite verification.

Also, the court now warns plaintiffs explicitly. They've had plenty of chances. It's thus likely the court will dismiss any plaintiff who fails to verify interrogatory responses.[4]

The court next considers plaintiffs' objections to the Magistrate Judge's recommendation that the court dismiss plaintiffs who answered interrogatories and admissions with open-ended responses advising merely that plaintiffs were gathering information.

### 2.    "Gathering Information" Responses

Recall that some plaintiffs answered interrogatories and RFAs simply by responding: "Plaintiffs are gathering information and/or documents responsive to this request and will supplement as soon as feasible." Doc. 121-1 at 250; *Id.* at 256. Defendant calls this non-responsive response "punting." And defendant argues that, with this answer, plaintiffs granted themselves an extension of time. The Magistrate Judge agreed and recommended that the district court dismiss "the claims of any Plaintiffs who have made open-ended 'gathering information' responses to Defendant's discovery requests[.]" Doc. 179 at 17. Plaintiffs object. Doc. 194 at 12–13. The court begins its analysis of this issue with the relevant law to determine if plaintiffs violated discovery rules and, if so, by how much.

The Federal Rules of Civil Procedure provide some guidance for parties answering interrogatories and RFAs. The guidance—as it applies to interrogatories—is short: "Each interrogatory must, to the extent it is not objected to, be answered *separately* and *fully* in writing under oath." Fed. R. Civ. P. 33(b)(3) (emphases added). In contrast, the guidance for RFAs is extensive:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly

---

[4]    Plaintiffs' Motion to Compel response didn't dispute that, ultimately, the court should dismiss plaintiffs who fail to verify their interrogatories. Doc. 155 at 7 (asking for "an additional 60 days to obtain the outstanding signed verifications before entering an order dismissing any individual plaintiffs who have failed to sign verifications").

> respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.  The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4).

Plaintiffs object that there "is no basis in law to hold that use of the phrase 'gathering information' or even a statement that 'plaintiff reserves the right to supplement' is contrary to the discovery rules." Doc. 194 at 12.  They're wrong.

Even under the shorter interrogatory standards, interrogatories "must . . . be answered . . . *fully*[.]" Fed. R. Civ. P. 33(b)(3) (emphasis added).  And the well-defined parameters for an RFA response require an admission, denial, or a statement detailing why the answering party can't admit or deny the RFA.  Fed. R. Civ. P. 36(a)(4).  Defendant correctly asserts that answering solely with "Plaintiffs are gathering information and/or documents responsive to this request and will supplement as soon as feasible" doesn't answer an interrogatory "fully." Fed. R. Civ. P. 33(b)(3).  Nor does this answer fall within the parameters of an RFA response—it's not an admission, denial, or a detailed statement.  Fed. R. Civ. P. 36(a)(4).  If plaintiffs wanted to assert that they lacked knowledge or information, they needed to assert that they have made reasonably inquiry and the information plaintiffs currently know or easily can secure is insufficient.  *Id.*  The court thus overrules plaintiffs' objection to the Magistrate Judge's conclusion that plaintiffs violated the discovery rules with these "gathering information" responses to interrogatories and RFAs.

Plaintiffs thus have violated the discovery rules, so the court must decide what to do about it.  The Magistrate Judge recommended dismissal.  Doc. 179 at 17.  Plaintiffs object.  Doc.

194 at 13. So, again, the court applies the five *Ehrenhaus* factors to determine, de novo, whether plaintiffs' "gathering information" responses warrant dismissal.

### a.   *Ehrenhaus* **Factors**

*First*: prejudice. A "gathering information" response causes more prejudice than a failure to verify interrogatory responses because a "gathering information" response implies there is responsive information but denies defendant access to that information. These responses also cause delay because they don't identify when plaintiffs will finish "gathering information" *See, e.g.*, Doc. 121-1 at 250; *Id.* at 256. In the court's view, plaintiffs' stonewalling and indefinite delay caused significant prejudice to defendant. This factor thus favors dismissal.

*Second*: interference with the judicial process. As explained above, the Magistrate Judge ordered plaintiffs to provide complete discovery responses by May 12. And "gathering information" doesn't qualify as a complete response. So, plaintiffs missed a court-ordered deadline, and this factor thus also favors dismissal.

*Third*: culpability. The court can't find bad faith or willful misconduct here. To be sure, a "gathering information" response violates the Rules. But parties use phrases like this often when they don't have enough information to answer the inquiry completely. Plaintiffs assert that they used the phrase out of "an abundance of caution[.]" Doc. 194 at 13. Plaintiffs also note that they've responded to the interrogatories and RFAs and responded fully to dozens of specific questions. *Id.* at 12. Plaintiffs object that the Magistrate Judge improperly and prejudicially declined to consider these "gathering information" responses in the context of plaintiffs' overall discovery participation. *Id.* The court agrees with plaintiffs. In the grand scheme of things, plaintiffs who have given these annoyingly open-ended responses still have submitted discovery responses. And plaintiffs have agreed to supply the information. The court concludes that this factor weighs against dismissal.

*Fourth*:  warning.  As discussed above, the Magistrate Judge didn't warn plaintiffs that their use of these responses could result in dismissal.  This factor thus weighs against dismissal.

*Fifth*:  the efficacy of lesser sanctions.  Defendant requested a lesser sanction than the Magistrate Judge imposed.  Defendant asked the court to order plaintiffs "who have answered the Requests for Admission with 'gathering information' or anything similar admit those items and Plaintiffs who answered the Interrogatories the same way must resubmit compliant responses in seven days or face dismissal[.]"[5]  Doc. 121 at 24.  The Magistrate Judge went further than defendant requested, recommending immediate dismissal of any plaintiff who made open-ended "gathering information" responses.  Doc. 179 at 17.  But defendant's own proposal suggests that a lesser sanction could work.

The Magistrate Judge also should have treated interrogatories and RFAs differently, as defendant's proposed sanction did.  The Federal Rules of Civil Procedure contemplate different sanctions for interrogatories and RFAs.  When a party fails to answer an interrogatory as required by Rule 33, a party can move to compel a response under Rule 37(a)(3)(B)(iii).  Rule 37(b)(4) provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond."  For RFAs, Rule 36 provides that a matter is admitted unless a party answers or objects within 30 days.  Fed. R. Civ. P. 36(a)(3).  "The automatic admission from a failure to respond is a sufficient remedy for the party who made the request."  8B Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice &*

---

[5]       To the extent defendant asked for a harsher remedy—immediate dismissal—in its reply, the court considers this argument waived.  The court, in its discretion, declines to consider this argument, raised for the first time in a reply.  *See Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003) (holding that an argument raised for the first time in a reply brief is waived (citation omitted)); *see also Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-1094-JTM-TJJ, 2018 WL 489100, at *1 (D. Kan. Jan. 19, 2018) ("[T]he Court will not consider arguments raised for the first time in a reply brief, particularly where the arguments could have been made in the first instance.").

*Procedure* § 2265 (3d ed. 2023). The court can impose Rule 37 sanctions only when the court orders a party to serve an amended RFA answer, and the party fails to comply. *Id.* This factor thus weighs against dismissal.

In sum, two factors favor dismissing plaintiffs who made "gathering information" responses, but three factors weigh against dismissing these plaintiffs. The court views the warning factor as especially important, and this factor weighs against dismissal. The court also notes that the Federal Rules of Civil Procedure don't contemplate dismissing a party for failing to respond properly to RFAs—at least, not at this stage. The court thus sustains plaintiffs' objection to the Magistrate Judge's recommendation that the court dismiss the claims of any plaintiffs who made "gathering information" responses to discovery requests.

### b.    Remedy

With plaintiffs' objection sustained, the court now must fashion a new remedy for plaintiffs' discovery failures. As explained above, the Magistrate Judge correctly concluded that these discovery responses violated the Federal Rules of Civil Procedure, but incorrectly sanctioned plaintiffs with immediate dismissal. Plaintiffs assert they have agreed to provide the information and are continually supplementing their responses. But the court shares the Magistrate Judge's dwindling patience with plaintiffs. Plaintiffs have a duty to supplement discovery, but the duty to supplement doesn't serve as a "Get Exemption from Discovery Deadlines Free" card.

The court, under Fed. R. Civ. P. 37(a)(3)(B)(iii), compels plaintiffs to answer the interrogatories fully within 40 days—no more "gathering information." If a plaintiff has no responsive information, that plaintiff's response must concede as much. The court warns plaintiffs. Failing to follow this Order could result in more sanctions under Rule 37, including dismissal.

The court also grants plaintiffs 40 days from the date of this Memorandum and Order to serve amended RFA responses that fully comply with Fed. R. Civ. P. 36(a)(4)—no more "gathering information" as a response.  After the 40-day deadline, the court will deem admitted any RFA to which a plaintiff responded only "gathering information" or some cognate of that response.

The court next considers the Magistrate Judge's recommendation that the court dismiss plaintiffs who have failed to produce documents responsive to defendant's RFPs.

### 3.      Producing No Documents

Some plaintiffs have failed to respond to defendant's RFPs, and the Magistrate Judge recommended that the court dismiss those plaintiffs.  Defendant's Motion to Compel asserted that 74 plaintiffs produced no documents, and 41 plaintiffs "have produced nothing besides a publicly available printout from the FAA website."  Doc. 121 at 16.  Defendant asked the court to dismiss these 115 plaintiffs or give plaintiffs seven days to complete their production or face dismissal.  *Id.* at 24.

Plaintiffs' response acknowledged that some plaintiffs haven't produced documents, but they promised to remove 57 of those plaintiffs.  Doc. 155 at 11.  Plaintiffs' counsel "acknowledge[d] that this is an issue and propose[d] that—for the Plaintiffs who have been admittedly dilatory—counsel have 60 days to contact those Plaintiffs to afford them a final chance[.]"  *Id.* at 12.

The Magistrate Judge agreed with defendant "that certain non-involved Plaintiffs should be removed from this case."  Doc. 179 at 18.  He saw "no equitable justification for allowing Plaintiffs' counsel yet another attempt to beg involvement from Plaintiffs that are clearly disinterested or unmotivated to actively participate in this litigation."  *Id.* at 19.  The Magistrate

Judge thus recommended that the court dismiss all 115 plaintiffs who hadn't responded at all or responded with nothing but the FAA printout.  *Id.*

Plaintiffs' objection to the Magistrate Judge's Report and Recommendation takes a more combative approach, compared to their self-aware response to the Motion to Compel.  Plaintiffs argue that the Magistrate Judge failed to consider the substance of the RFPs and failed to consider that plaintiffs might not have any documents to produce.  Doc. 194 at 13–14.  Plaintiffs acknowledge that they must respond to valid discovery requests but argue that the Magistrate Judge's dismissal remedy "is far too severe."  *Id.* at 14.  Plaintiffs ask for a lesser remedy: "consideration of each Plaintiff's situation on a case-by-case basis."  *Id.*  Plaintiffs want to establish that each "plaintiff facing dismissal actually has the requested documents, is willfully failing to produce them, and that the absence of such documents actually has some bearing on the claims at risk of dismissal."  *Id.* (emphasis omitted).  Plaintiffs ask for a court order requiring them "to identify where they have no documents for a certain category."  *Id.*

In the court's view, plaintiffs' objection deals with a different issue than does their Motion to Compel response.  In their response, plaintiffs' counsel acknowledged that they were struggling to contact some plaintiffs and asked for a final chance to reach them.  But in their objection, plaintiffs assert that, perhaps, they simply don't have any of the documents requested.  This is an important distinction.  There's a big difference between refusing to engage in the discovery process and having nothing to contribute to the discovery process.  And that difference has serious implications for the *Ehrenhaus* factors of prejudice, culpability, and efficacy of lesser sanctions.

To illustrate this difference, consider the five *Ehrenhaus* factors for plaintiffs who refuse to respond to their lawyers' attempts to contact them.  These plaintiffs may have documents, but

they're not producing them to the company they sued, thus depriving defendant of needed information and causing significant prejudice.  These plaintiffs have blown several court deadlines.  And these plaintiffs and their refusal to respond are to blame for the problem.  It's true that these plaintiffs received no warning of dismissal.  But a lesser sanction wouldn't work with plaintiffs who, for whatever reason, refuse to respond to their lawyers.  Thus, four *Ehrenhaus* factors favor dismissal of plaintiffs who have ignored counsel's "repeated requests and reminders of their discovery obligations."  Doc. 155 at 12.  Only one factor—warning, the most important factor here—weighs against dismissal.

Now consider the five *Ehrenhaus* factors for the second scenario:  plaintiffs who don't have any documents to produce.  These plaintiffs aren't causing nearly as much prejudice to defendant because they're not hiding information; they just don't have anything to contribute.  But these plaintiffs still have blown through the court's deadlines.  And yet, the culpability of these plaintiffs is hard to gauge.  Have they destroyed records?  Have they failed to keep records that federal law requires them to keep?  In any event, these plaintiffs received no warning.  And a lesser sanction—say, requiring plaintiffs to declare that they don't have the documents and preventing them from using any late-disclosed documents at summary judgment or trial—could suffice for these plaintiffs.

Plaintiffs didn't even bring the second scenario to the Magistrate Judge's attention.  *See generally* Doc. 155 at 11–12.  The court could consider this argument waived but, as explained above, this distinction has meaningful consequences for the *Ehrenhaus* analysis.  The court sees this distinction as an opportunity to get the case back on track.  And the court must heed our Circuit's directive to resolve cases, when possible, on their merits.  Given this decision to consider new argument, the court sets aside the Magistrate Judge's conclusions about these

plaintiffs and, below, fashions a different remedy for each scenario.  28 U.S.C. § 636(b)(1)(C) (allowing the district court to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge").  But the court adopts the Magistrate Judge's understandable impatience and stays close to his recommendation.

*First*:  consider the plaintiffs who haven't provided any documents to counsel "despite repeated requests and reminders of their discovery obligations."  Doc. 155 at 12.  The court appreciates the candor of plaintiffs' counsel on this question.  And the court recognizes that the fourth *Ehrenhaus* factor—warning—weighs against immediate dismissal.  The court nonetheless agrees with defendant, *i.e.*, "producing nothing is evidence of disinterest" and this disinterest creates "an insurmountable hurdle[.]"  Doc. 200 at 17 (emphasis omitted).  The court thus chooses the less-onerous of defendant's proposed remedies and makes it slightly less onerous: the court grants plaintiffs' counsel 40 days to try to contact their non-responsive clients.  The court orders plaintiffs' counsel to file a list of plaintiffs who have remained non-responsive 40 days from this Memorandum and Order.[6]  The court warns those plaintiffs (and their counsel) that the court will conclude that any plaintiffs who remain non-responsive are refusing to comply with a court order.  The court thus will consider any non-responsive plaintiff culpable for failing to respond.  And the court warns plaintiffs and their counsel:  it's likely to dismiss any plaintiff appearing on the list of non-responsive plaintiffs submitted by counsel.[7]

---

[6]     The court allows plaintiffs to file their own list in the hope that plaintiffs' counsel will continue its candor with the court.  If defendant believes that plaintiffs' counsel has omitted non-responsive plaintiffs from the list of non-responsive plaintiffs, defendant will have 10 days after the list's filing to file a motion challenging the completeness of plaintiffs' list.  Plaintiffs will have three days to file any response to that motion.  These are short deadlines but they're deserved ones.  And finally, the court will consider monetary sanctions on plaintiffs' counsel if defendant shows that plaintiffs' counsel omitted non-responsive plaintiffs from this list.

[7]     Plaintiffs never dispute that those plaintiffs who produced only a publicly available printout from the FAA website have failed to participate meaningfully in discovery.  *See generally* Doc. 155; Doc. 194.

Now, the other scenario:  plaintiffs who haven't produced documents because they simply don't have any.  The court orders each plaintiff to submit a written response to the RFPs specifying:  (1) that plaintiff doesn't have any of the documents requested; (2) whether plaintiff ever had the documents requested; and (3) if plaintiff once had the documents, why plaintiff no longer possesses those documents.  While the court doesn't decide the question now, these plaintiffs likely would have to explain why they deserve to use any document produced more than 40 days after this Memorandum and Order at summary judgment or trial.  The court orders plaintiffs to serve these complete, written RFP responses within 40 days of this Order.

With this discovery issue resolved, the court next considers the Magistrate Judge's Report and Recommendation dismissing plaintiffs who have failed to produce requested communications.

### 4.      Producing No Communications

When defendant filed its Motion to Compel on June 29, 2023, 28 plaintiffs had produced communications that totaled 30 "communications" in all.  Doc. 121 at 16.  Defendant's RFPs indisputably requested communications.  *See* Doc. 121-1 at 35–38.  And, defendant argued, plaintiffs have made this case about communications.  So, in defendant's view, plaintiffs put communications at issue and then refused to provide any of them, leaving defendant in an impossible position.  Defendant's Motion to Compel asked the court to order plaintiffs to

---

The court thus considers these plaintiffs non-responsive, and plaintiffs' counsel must determine whether these plaintiffs, in effect, are equivalent to non-responsive plaintiffs or the plaintiffs who simply don't have any documents of their own to produce.

complete their production for communications within seven days, or face dismissal.  Doc. 121 at 24.[8]

Plaintiffs, for their part, asserted that they agreed to produce communications that exist.  Doc. 155 at 12.  Plaintiffs' counsel conceded that some plaintiffs were dilatory in responding and asked for a final chance for these plaintiffs.  *Id.*  But plaintiffs' counsel also asserted that some plaintiffs simply don't have any of the requested communications.  *Id.*  Plaintiffs argued that not having communications to produce doesn't amount to a discovery violation and whether "the absence of a certain document is fatal to a specific [one or more of a] Plaintiff['s] claim is a question for another day." *Id.* at 13.

The Magistrate Judge agreed with defendant.  He took issue with plaintiffs' blatant refusal and failure to produce communications, or concede that they don't have any communications.  Doc. 179 at 21–22.  The Magistrate Judge concluded that plaintiffs "have unequivocally injected Defendant's communications into the very heart of this litigation." *Id.* at 22.  The Magistrate Judge thus recommended that the court dismiss plaintiffs who have failed to produce evidence to support their claims.  *Id.*

Plaintiffs object to this recommendation.  Doc. 194 at 14–15.  Plaintiffs asserted that defendant itself recently produced some of the requested documents.  *Id.* at 14.  So, plaintiffs argue, the court shouldn't accredit defendant's argument that it can't defend itself without plaintiffs producing the requested communications.  *Id.* at 14–15.  Plaintiffs also object that the Magistrate Judge failed to cite any law requiring plaintiffs to support their fraud claims with communications.  *Id.* at 15.  And plaintiffs object to the Magistrate Judge's recommendation that

---

[8]        The parties' papers use the term "communications" without dispute and the definitions for defendant's requests for production define it.  *See* Doc. 121-1 at 29–30, 35.  The court adopts the parties' convention and uses the term the same the parties do.

the court dismiss *all* claims, arguing that such a broad sanction isn't "related" to the claim at issue.[9] *Id.*

The court sustains plaintiffs' objection. The Magistrate Judge asserted that plaintiffs' claims of "fraud and deception . . . clearly find their bases in communication by Defendants." Doc. 179 at 19. Yet the Magistrate Judge recommended dismissal of *all* claims brought by each plaintiff who failed to produce any communications. Some of plaintiffs' claims—breach of implied warranty, breach of express warranty, strict liability manufacturing defect—don't rely on communications. And this issue is linked inextricably with the merits of plaintiffs' claims. Defendant's vague assertion that this case "is about communications" doesn't qualify as legal analysis. If defendant believes that plaintiffs' fraud and deception claims fail as a matter of law because plaintiffs can't produce any communications, then the appropriate mechanism is a summary judgment motion. Given these errors, the court needn't consider the *Ehrenhaus* factors in detail to conclude that the Magistrate Judge shouldn't have dismissed all claims by plaintiffs who failed to produce communications.

With plaintiffs' objection sustained, the court must consider what to do with this communications issue. If plaintiffs don't have communications, they must say so—and say so explicitly. Thus, the court applies its remedy, detailed above, that requires plaintiffs to state in writing that they don't possess any communications. The court orders each plaintiff who failed to produce communications to submit an amended written response to the RFPs within 40 days specifying whether that plaintiff: (1) doesn't have any of the communications requested; (2) ever had the communications requested; and (3) if the plaintiff once had the requested

---

[9]    Plaintiffs object based on *Insurance Corp. of Ireland*, 456 U.S. 694, Doc. 194 at 15, but defendant argues that plaintiffs have waived this argument, Doc. 200 at 19. Indeed, plaintiffs' response to the underlying Motion to Compel doesn't cite the case or argue that dismissal of all claims would violate the principles of the case. *See generally* Doc. 155.

communications but no longer has them, why that plaintiff no longer has those communications. The court likely will not allow any of these plaintiffs to use any communication produced more than 40 days after this Memorandum and Order.  The court orders plaintiffs to serve these complete, written RFP responses within 40 days of this Memorandum and Order.

### 5.    "Copy and Paste" Responses

Recall that defendant's Motion to Compel asserted that plaintiffs have copied and pasted identical, non-responsive answers to some interrogatories.  Interrogatory No. 2 asked plaintiffs to describe the cracking on their aircrafts.  Doc. 121-1 at 13.  Interrogatory No. 4 asked plaintiffs to identify and describe defendant's alleged misrepresentations and misstatements.  *Id.* at 13–14. Defendant asserted that plaintiffs again tried to skirt their duty to respond individually by utilizing lawyer-drafted answers that simply were copied and pasted for all plaintiffs.  Doc. 121 at 19.  Defendant even pointed to one plaintiff's response that showed a highlighted menu of multiple-choice options for a plaintiff to use when responding to the interrogatory about aircraft cracking.  *Id.* at 21–22.

Plaintiffs responded, arguing that they'd done nothing improper.  Doc. 155 at 13. Plaintiffs asserted that the aircraft cracking "is far and away similar across this fleet of aircraft." *Id.* at 14.  Plaintiffs noted that they have produced photos of individual aircraft.  *Id.*  And plaintiffs took serious issue with defendant's attack on the multiple-choice option menu, asserting attorney-client privilege and accusing defendant of acting unprofessionally by using manifestly privileged communications.  *Id.* at 13.

The Magistrate Judge skipped the attorney-client privilege issue and focused solely on the discovery response themselves.  Doc. 179 at 26.  He concluded that the copy and paste responses confirmed that plaintiffs weren't taking their duty to respond as individuals seriously. *Id.*  And, he also took issue with plaintiffs ignoring defendant's "valid concern that the options

provided by Plaintiffs' counsel [in the menu of multiple-choice options for responses] do not include an option to the effect of 'my aircraft does not exhibit cracking.'"  *Id.*  The Magistrate Judge concluded, "Having failed to provide interrogatory responses from the individual Plaintiffs, the court recommends to the district court that Plaintiff[s'] claims be dismissed."[10]  *Id.* (emphases omitted).

Given that the Magistrate Judge recommended dismissal, the court turns to the *Ehrenhaus* factors.  But first, it must consider whether plaintiffs' responses to these interrogatories are improper.

### a.    Propriety of Copy and Paste Responses

The Magistrate Judge concluded that plaintiffs' copy and paste responses were invalid because they lacked an option to respond that a particular plaintiff's aircraft doesn't exhibit cracking.  Plaintiffs object to this conclusion with a strange request:  "Plaintiffs ask the court to consider the very reasonable hypothetical scenario where, in the years preceding the discovery at issue, Plaintiffs' counsel already asked each of their clients whether or not their aircraft exhibit[ed] cracking and addressed each client's response accordingly in preparation of their discovery."  Doc. 194 at 16 (emphasis omitted).  But plaintiffs never assert that this hypothetical vetting actually occurred.  *Id.*  The court nonetheless begins with the premise that each plaintiff's airplane has experienced at least some cracking.  That's what plaintiffs allege in their Fourth Amended Complaint, and presumably plaintiffs' counsel had a good faith basis grounded in actual fact to allege as much.  *See* Doc. 168 at 176.  The court thus disagrees with the Magistrate

---

[10]    Later in his Report and Recommendation, the Magistrate Judge clarified that this dismissal applied only to plaintiffs who had provided copy and paste responses—not every single plaintiff.  Doc. 179 at 33.

Judge that the copy and paste responses are improper because the menu of options doesn't include an option for no cracking.

This issue thus comes down to whether a party can use a template to respond to discovery requests. Defendant argues that plaintiffs used templates unethically to skirt their obligations to answer discovery individually. Doc. 200 at 18. Defendant even amps the rhetoric another notch, calling plaintiffs' use of this tactic "just shy of fraud." *Id.* Plaintiffs respond this means of response is "normal" and "critical to accommodate the challenge of numerosity presented here." Doc. 194 at 16. Unfortunately, neither party has cited any law to support their many opinions. *See* Doc. 194 at 15–16; Doc. 200 at 18.

In many ways, this dispute serves as a microcosm of this case. Defendant brings substantial discovery questions[11] to the court's attention but uses unhelpful rhetoric, and then asks the court to take action against hundreds of plaintiffs based upon a few examples. Meanwhile, plaintiffs assert they've done nothing wrong and that they're dealing with the realities of this case as best they can. No wonder the Magistrate Judge lost patience with the case's discovery record.

The court can't conclude that plaintiffs' responses to these interrogatories are inherently improper. In the court's experience, litigants sometimes use others' discovery responses as templates. The court also credits plaintiffs' assertion that the cracking across all aircraft is similar. The court thus sustains plaintiffs' objection. But the court warns plaintiffs. They must fulfill their discovery responsibilities.

---

[11]     Defendant asserts that depositions have shown that these copy and paste responses are false. Doc. 200 at 18. If so, that's a genuine and material problem. But this issue isn't before the court. Defendant's response to plaintiffs' objection to the Magistrate Judge's Report and Recommendation also directed the court to briefing elsewhere about this issue, but the court declines to consider it here. To do so, in effect, would grant defendant excess pages of briefing.

Even if the court found these responses improper, the *Ehrenhaus* factors don't support dismissing these plaintiffs.

### b.      *Ehrenhaus* Factors

*First*: prejudice. As plaintiffs' objection points out, some plaintiffs have provided defendant with photos of the cracks on their aircraft. Doc. 194 at 15. In the court's view, if a plaintiff has produced photos of his aircraft, then these responses don't impose much prejudice on defendant. But the court understands defendant's point that it's the overall failure to respond as individuals that prejudices it. The court views this factor as a wash.

*Second*: interference with the judicial process. Unlike the other discovery violations, plaintiffs didn't blow through a deadline. But the court credits defendant's concern that these responses suggest that plaintiffs aren't taking their duty to respond to discovery—individually— as seriously as the rules require. This factor thus favors dismissal.

*Third*: culpability. This factor considers the culpability of the *litigant*. The court can't blame plaintiffs for this. Plaintiffs' counsel asserts that these copy and paste responses are "normal practice." Doc. 194 at 16. And counsel asserts that this approach "is even more critical to accommodate the challenge of numerosity presented here." *Id.* Plaintiffs chose to file (or join) a case including 600+ plaintiffs. They seek to recover substantial damages. Those decisions come with responsibilities and plaintiffs aren't fulfilling them. While the court is less than thrilled with plaintiffs' approach, this factor, on balance, doesn't favor a sanction as strong as dismissal.

*Fourth*: warning. Again, plaintiffs received no warning that this issue would lead to dismissal. This factor weighs against dismissal.

*Fifth*: the efficacy of a lesser sanction. Defendant's Motion to Compel proposed a lesser sanction. It asked the court to declare plaintiffs' responses inadequate and order plaintiffs to

"submit new, compliant responses within seven days or face dismissal."  Doc. 121 at 24.  Given that defendant suggested a lesser sanction could resolve this issue, this factor weighs against dismissal.

In sum, that's one neutral factor, one factor favoring dismissal, and three factors disfavoring dismissal.  The court thus sustains plaintiffs' objection and declines to dismiss the claims of plaintiffs who have submitted copy and paste responses.[12]

## IV.        Summary and Next Steps

The court reluctantly sustains plaintiffs' objection to dismissal of their claims for failing to comply with discovery.  But the court agrees with the Magistrate Judge.  Plaintiffs have frustrated the essential and proper purposes of discovery.  Also, the parties have exhausted the court's tolerance for inflated rhetoric and finger pointing.  Plaintiffs need to shoulder the discovery burdens that come with asserting substantial claims, including claims of dishonesty. Defendant needs to spare the histrionics, focusing its effort on the substance of the claims.

Defendant complains that "any result besides dismissal would steer this case into no-man's land" because plaintiffs haven't "provided a date by which they will fix their discovery." Doc. 200 at 14.  The court now has used its authority to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" to impose deadlines by which plaintiffs must fix their discovery responses.  28 U.S.C. § 636(b)(1)(C).  These measures should nullify defendant's concerns.

---

[12]        The court doesn't view copy and paste discovery responses as inherently inadequate.  But the court remains concerned that plaintiffs aren't taking their responsibility to respond to discovery—individually—seriously.  The court also is concerned that copy and paste responses ultimately will prove inaccurate.  The court thus warns plaintiffs.  It will consider sanctions—including fees and costs or even dismissal—against plaintiffs and their counsel who have answered Interrogatories 2 and 4 inaccurately.

The court directs plaintiffs and defendant to fix the problems that led to this Order.

Specifically, defendant and plaintiffs must complete each of the following tasks on the schedule summarized in the following summary chart:

| Subject of Discovery Dispute | Plaintiffs' Responsibilities | Defendant's Responsibilities |
|---|---|---|
| **Conditional Objections** | Serve supplemental RFA responses that admit or deny the RFAs within 40 days of this Order. Serve supplemental interrogatory responses that do not contain conditional objections within 40 days of this Order. *See above* § III.A.3; *see also* Doc. 179 at 11–12. | None |
| **Boilerplate Objections** | Serve supplemental answers not restricted by the objections within 40 days of this Order. *See above* § III.A.3; *see also* Doc. 179 at 13–14. | None |
| **Unverified Interrogatories** | Serve interrogatory response verifications within 40 days of this Order. File joint list within 55 days of this Order identifying all plaintiffs who have failed to verify interrogatory responses. *See above* § III.B.1.c. | File joint list within 55 days of this Order of plaintiffs who have failed to verify interrogatory responses. *See above* § III.B.1.c. |
| **"Gathering Information" Responses** | Answer interrogatories fully and serve within 40 days of this Order. Serve RFA responses that fully comply with Rule 36(a)(4) within 40 days of this Order. *See above* § III.B.3.b. | None |

| Producing No Documents | For plaintiffs who haven't provided any documents to counsel, file list of plaintiffs who have remained non-responsive within 40 days of this Order.  If defendant challenges the completeness of this list of non-responsive plaintiffs, file a response within three days of defendant's motion.  For plaintiffs who haven't produced any documents because they don't have any, serve complete, written RFP responses within 40 days of this Order that meet the specifications of this Order. *See above* § III.B.3. | If defendant believes plaintiffs' counsel have omitted non-responsive plaintiffs from the list of non-responsive plaintiffs, file a motion challenging the completeness of plaintiffs' list within 10 days of the list's filing. *See above* § III.B.3. |
|---|---|---|
| Producing No Communications | For plaintiffs who don't have communications, serve complete, written RFP responses within 40 days of this Order that meet the specifications of this Order. *See above* § III.B.4. | None |

With plaintiffs' objections to the Magistrate Judge's Report and Recommendation now decided, the court now returns the case and responsibility for discovery supervision and case management to Judge Schwartz.  Absent exceptional circumstances, the parties should anticipate that Her Honor strictly will enforce the compliance deadlines imposed by this Order.[13]  So that it is clear:  the large number of plaintiffs bringing suit under one caption is not an exceptional circumstance.

---

[13]     As mentioned above, the court gave plaintiffs extra time to meet deadlines that fall after the intervening holidays.  Because these deadlines account for the holidays, the court doesn't view the holidays as exceptional circumstances.

Finally, the court isn't persuaded by defendant's claims that the court shouldn't try to resolve these claims using the bellwether model. Though the discovery remedies imposed by this Order apply to all plaintiffs who still assert claims, the court directs the parties to work with Judge Schwartz to identify 10 plaintiffs whose claims truly are representative of claims asserted by all plaintiffs. The court leaves it to Judge Schwartz to manage the process of selecting these 10 plaintiffs. Once selected, the court will engage the parties in the process of selecting the sequences for making those 10 plaintiffs ready for dispositive motion practice and trial on the schedule adopted in the Second Revised Scheduling Order (Doc. 221) and, as still applicable, its predecessors.

## V.        Conclusion

The court accepts in part, rejects in part, and modifies in part the Magistrate Judge's Report and Recommendation (Doc. 179). The court accepts the Magistrate Judge's Report and Recommendation about plaintiffs' conditional and boilerplate responses. The court rejects his Report and Recommendation about dismissing plaintiffs who have committed discovery violations. And the court modifies the remedy portions of the Magistrate Judge's Report and Recommendation that recommended dismissal.

The court returns enforcement of this Memorandum and Order's remedies and schedule to Judge Schwartz.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Magistrate Judge's Report and Recommendation (Doc. 179) is accepted in part, rejected in part, and modified in part, all as set forth in full in this Memorandum and Order.

**IT IS SO ORDERED.**

Dated this 11th day of December, 2023, at Kansas City, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge